## In re AREACO INVESTMENT COMPANY, INC. d/b/a Rocky Ridge Ranch and Log Cabin Estates, Debtor/Movant.

### Bankruptcy No. 91–43555–293.

United States Bankruptcy Court,
E.D. Missouri, E.D.

March 17, 1993.

Dana Hockensmith, Weier, Hockensmith & Sherry, St. Louis, MO, Stuart J. Radloff, Clayton, MO, for debtor in possession.

Leonora S. Long, Attorney/Advisor for the Office of the U.S. Trustee, St. Louis, MO.

Wendi S. Alper, St. Louis, MO, for Official Unsecured Creditors Committee.

David Waltrip, St. Louis, MO, for Kaye V. Reichard.

Peter D. Kerth, St. Louis, MO.

## MEMORANDUM OPINION

DAVID P. McDONALD, Bankruptcy Judge.

### JURISDICTION

This Court has jurisdiction over the parties and subject matter of this proceeding pursuant to 28 U.S.C. §§ 1334, 151, and 157 and Local Rule 29 of the United States District Court for the Eastern District of Missouri. This is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(A), which the Court may hear and determine.

### PROCEDURAL AND FACTUAL BACKGROUND

Arthur E. Collins organized the Debtor corporation in August 1961 for the purpose of developing Rocky Ridge Ranch, a resort community south of St. Louis. In 1969 the Debtor launched its second resort, in Malakoff, Texas, patterned after Rocky Ridge Ranch and known as Log Cabin Estates. Areaco offered memberships in both resorts ranging from ownership of lots to contractual memberships allowing access

to the meeting rooms and recreation halls, restaurants, shops, swimming pools, tennis courts, driving ranges and various recreational activity areas. In the ensuing years the Debtor was engaged in continual and protracted litigation with the homeowners. The Debtor stated in its disclosure statement that a combination of seemingly endless litigation and a decrease in cash flow from unpaid assessments precipitated its Chapter 11 filing. In seeking the protection of the Bankruptcy Code Areaco hoped to reach a comprehensive settlement of both its management and financial problems in Texas and Missouri.

The Debtor filed its Voluntary Chapter 11 Petition on May 30, 1991. On that same day, the Debtor filed two nearly-identical Application(s) For Employment Of Attorney seeking to retain the legal services of the law firms of Radloff & Riske and Weier, Hockensmith & Sherby. Due to Dana Hockensmith's admitted lack of experience in representing Chapter 11 Debtors, the Debtor decided it was necessary to retain Stuart Radloff for his expertise as a bankruptcy counsel. The Debtor, however, also believed it was necessary to retain Hockensmith as bankruptcy counsel because he had represented the Debtor for over fifteen years and had intimate knowledge of the corporate problems and litigation facing the Debtor. Since Radloff had never represented the Debtor, AREACO felt that Hockensmith would provide a vital service and assistance to Radloff. Without Hockensmith's assistance Radloff would have to have invested additional time investigating and becoming familiar with the Debtor's problems. The estate would have ultimately borne the costs associated with Radloff's education.

The Affidavits of Stuart J. Radloff and Dana Hockensmith which accompanied each applications for employment were prepared by Mr. Radloff's office and were identical in content (except for the names of the attorneys and their firms). The Weier, Hockensmith & Sherby Application contained the following pertinent language:

"5. To the best of Applicant's knowledge, Weier, Hockensmith & Sherby, have no connection with the creditors or any other party in interest or their respective attorneys.

6. Weier, Hockensmith & Sherby, represents no interest adverse to Applicant as Debtor–In–Possession or to the estate in the matters upon which they are to be engaged by Applicant as Debtor–In–Possession, and their employment is necessary and should be in the best interest of the estate." [1]

Dana Hockensmith's Affidavits contained the following pertinent language:

"2. They have no connection with the above-named Debtor, its creditors or any other party in interest herein or their respective attorneys.

3. They do not represent any interest adverse to the Debtor–In–Possession herein or its estate in the matters upon which they are to be engaged." [2]

The Court approved the employment of both Stuart Radloff and Dana Hockensmith as attorneys for the Debtor, on June 11, 1991. In the years that followed they both took a very active and open roll in attempting to settle various disputes between the Debtor and creditors and landowners in both Texas and Missouri.

On July 13, 1992 Hockensmith filed his First Interim Application seeking compensation in the amount of $27,623.32 for legal services and $529.41 for reimbursement of expenses, for a total of $28,152.73. Thereafter, Hockensmith filed a Supplemental Application For Compensation And Expenses Of Debtor's Attorney seeking an additional $9,059.24 for legal services and $638.98 reimbursement of expenses for the period from June 1, 1992 through October 2, 1992 for a sub-total of $9,698.23, and a total of $36,682.56 for legal services and $1,168.39 for reimbursement of expenses. Hockensmith had received and used a $4,500.00 retainer without requesting or receiving the permission of this Court. He also received an additional payment of

---

1. Stuart Radloff's application was identical to the Hockensmith application.

2. Stuart Radloff's Affidavit was identical to that of Dana Hockensmith.

$3,219.93 from the Debtor, which he now seeks the Court's permission to apply to his present fee application.

Notice was given and a hearing was scheduled for November 23, 1992 to hear Mr. Radloff and Mr. Hockensmith and any objections to their requests for fees.[3] Objections to Hockensmith's fees and expenses were filed by the United States Trustee, the Official Unsecured Creditors' Committee and Kaye V. Reichard, a creditor. The objections were numerous, but the primary thrust of the objections was that the application failed to give adequate detail regarding the services provided and as a result, it was not possible to determine if the services were valuable and the compensation requested reasonable. In addition there were objections based on the failure to identify who performed the work, the hourly fee for those individuals, the lack of specificity regarding the substance of many telephone calls, the bunching of time into large blocks without sufficient explanation as to what services were rendered within the large blocks of time, and billing for services that appear to be for the benefit of Art and Wanda Collins. The Court sustained the U.S. Trustee's objections and granted Hockensmith fifteen days to amend the Application and the Supplemental Application to address the issues raised in the objections of the United States Trustee and to provide further and more detailed information. Mr. Hockensmith complied with the Court Order by filing his Second Application which provided additional information to supplement his previous fee applications. Hockensmith's Second Application also requested fees for legal services in the amount of $4,560.00 and

reimbursement of expenses of $369.19 for the period between October 1, 1992 and December 8, 1992.[4] Therefore, he presently seeks a total fee and reimbursement of expenses in the sum of $47,280.15 for legal services and expenses and permission to apply the $4,500.00 and $3,219.93 he previously received to the $47,280.15:

| | |
|---|---:|
| Initial Retainer For Fees & Expenses: | $ 4,500.00 |
| First Interim Application Fees & Expenses: | 28,152.73 |
| Supplemental Application Fees & Expenses: | 9,698.23 |
| Final Request For Fees & Expenses: | 4,929.19 |
| | $47,280.15 |

Both the U.S. Trustee and the Official Unsecured Creditors' Committee renewed their objections, which the Court heard on January 21, 1993. They both objected that many of the legal services were provided for the benefit of Art and Wanda Collins and not for the Debtor. In addition the Committee requested that if the Court intended to grant Hockensmith a fee it should be reduced by $12,374.00 a sum which the Committee argues represents duplicate efforts of Hockensmith and other attorneys.

The U.S. Trustee asserts that Hockensmith failed to promptly reveal his past representation of the Collinses. A review of the Debtor's Disclosure Statement and schedules (filed on June 14, 1991) indicates that Art and his wife Wanda Collins are the sole stockholders, officers and directors of the Debtor corporation. Paragraphs 13a (Payments of loans, installment purchases and other debts) and 20 (Payments or transfer to attorneys) of the schedules indicate that Weier, Hockensmith & Sherby received the following fees from the Debt-

---

**3.** On October 6, 1992 Radloff filed his Application for Compensation seeking $28,976.50 for legal services and $2,077.85 for reimbursement of expenses. There were no objections filed to his application and an Order was issued on November 25, 1992 granting fees and expenses as requested.

**4.** The last fee request includes hours expended by Hockensmith in revising and filing his Supplemental Application. Since this additional work was necessitated by Hockensmith's lack of knowledge of the Court's Guidelines, he has expressed a willingness to waive a portion of this additional fee request.

or, during the year immediately preceding
the filing this bankruptcy:

| | | |
|---|---|---|
| June 14, 1990 | $ 1,000.00 | |
| June 20, 1990 | 9,187,85 | |
| Aug. 2, 1990 | 2,665.65 | |
| Nov. 19, 1990 | 14,472.14 | |
| Jan. 22, 1991 | 314.20 | |
| Feb. 27, 1991 | 303.41 | |
| Mar. 19, 1991 | 564.36 | |
| Apr. 24, 1991 | 435.23 | |
| May 24, 1991 | 10,000.00 | ($4,000.00 retainer) |
| May 24, 1991 | 500.00 | |
| | $39,442.84 | |

The May 24 payment of $10,000.00 to Hockensmith included a general retainer to be used for legal service rendered for the current Chapter 11. case.[5] With the exception of the $4,000.00 retainer, the record is silent as to the nature of the legal service rendered by Hockensmith that entitled him to receive $29,442.84 from the Debtor.[6] Apparently these fees were earned for providing non-bankruptcy legal services prior to the filing of the current Chapter 11 case. Other than the reference to legal fees found in paragraphs 13a and 20 Hockensmith had not informed the Court, U.S. Trustee or any creditors that he had represented both the Debtor and the Collinses before he filed his fee applications. The Assistant United States Trustee appointed three individuals to the Committee of Unsecured Creditors on December 31, 1991. On May 29, 1992 the Committee filed an application to approve their employment of Wendi S. Alper as their attorney and on June 4, 1992 the Court entered an Order approving the Committee's request. Ms. Alper stated she did not become aware of Hockensmith's former representation of both the Debtor and the Collinses until September 11, 1992. The U.S. Trustee also pointed out that Hockensmith's Affidavit and Debtor's Application for Employment of Attorney did not mention his past representation of Areaco and the Collinses and the Trustee did not receive this information until the Fall of 1992. Mr. Hockensmith testified that his Affidavit and Application were prepared by Radloff and he assumed they were in proper form.

During the confirmation hearing on November 23, 1992 and the hearing on his fees on January 28, 1993, Hockensmith readily admitted that he not only had provided extensive legal service for the Debtor prior to the filing of the bankruptcy case, but on occasions he represented Areaco's sole stockholders, Art and Wanda Collins. Hockensmith denied that he had any conflict of interest and insisted that he represented only the Debtor and not the Collinses during the course of this Chapter 11 case and that none of the fees he sought reflected any legal services rendered on behalf of the Collinses. However, at the Confirmation hearing Arthur Collins and Donald L. Nolton, President of Rocky Ridge Property Owners both testified that during the negotiations of the "Settlement Agreement" Dana Hockensmith represented the Collins. Other than the statements of Collins and Nolton the objecting parties did not offer any evidence which would prove that any of the hours Hockensmith billed for the Debtor were actually hours

---

5. Radloff and Riske received $20,000.00 as a retainer (including filing fee) prior to filing the bankruptcy.

6. There is a discrepancy as to the amount of Mr. Hockensmith's initial retainer. The schedules indicate a retainer of $4,000.00, but he testified that he received $4,500.00 as a retainer. The Court assumes the $500.00 was used as the filing fee.

for legal services rendered on behalf of the Collinses or benefitted the Collinses in such a way that was detrimental to the Debtor or its creditors. As a result of the legal services Hockensmith and Radloff performed for the Debtor corporation, a comprehensive settlement was achieved, the Debtor's Plan of Reorganization was confirmed and as owners of Areaco Investment Company the Collinses may eventually receive several million dollars if the Plan is fully implemented.

## *DISCUSSION*

■ The Debtor was entitled to employ an attorney of its choice, so long as the selection complied with 11 U.S.C. § 327(a):

"§ 327. Employment of professional persons

(a) Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys ... that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title."

Section 1107(b) provides that a person is not necessarily disqualified from employment under § 327 by a Debtor in possession solely because of employment by or representation of the debtor before the commencement of the bankruptcy case. However, it must be kept in mind that to be employed pursuant to § 327 such a person must, in all other respects, be disinterested as that term is defined in § 101.

■ The trustee and the Official Unsecured Creditors' Committee filed numerous objections to Mr. Hockensmith's fee applications. Although they do not question or challenge the quality of Hockensmith's services, his hourly rates or that he personally holds an interest adverse to the estate, the objectors argue that his loyalty was to the Collinses and that he supported their individual efforts to get as much out of the settlement as possible to the estate's detriment. Neither the U.S. Trustee nor the Creditors' Committee seek to deny his entire fee. The primary objection deals with an alleged conflict of interest which existed by the virtue of Hockensmith's represent-

ing both the Debtor and its sole stockholders, Art and Wanda Collins. If proven, the representation of an interest adverse to the estate during his employment under § 327(a) is cause to deny Hockensmith's right to receive a fee, in whole or in part, pursuant to § 328(c) of the Bankruptcy Code. The use of § 328(c) to penalize the attorney rests in the discretion of the bankruptcy judge. See *In re Howell,* 148 B.R. 269 (Bkrtcy.S.D.Tex.1992); *In re Amdura Corp.,* 139 B.R. 963, 978 (Bankr.D.Colo. 1992).

The U.S. Trustee and Creditor's Committee also argue that the court should take into consideration Hockensmith's failure to explain his past representation of the Debtor and the Collinses in his Application For Employment of Attorney and Affidavit or at least at some earlier point in the case. They further assert that the Application For Employment Of Attorney and Affidavit contain statements that are untrue and provide additional reasons for reducing or denying his fee request. In his employment application and affidavit Hockensmith indicates that he and his firm "have no connection with the creditors or *any other party in interest* ..." and "They do not *represent any interest adverse* to the Debtor–In–Possession herein or its estate in the matters upon which they are to be engaged." (emphasis added) The objectors are correct in their assertion these statements are simply not true. Clearly Hockensmith's long association with and representation of the Collinses represents a connection with a *party of interest* and the Collinses' *interest may be adverse to the Debtor-in-possession.*

In his defense Mr. Hockensmith points out that he is not a bankruptcy attorney and at the inception of this case he recognized that he did not possess the requisite expertise to represent Areaco in its Chapter 11 case. Hence, the Debtor retained Mr. Radloff, who prepared Hockensmith's affidavit and application for employment, which he signed relying on Radloff's expertise and because he felt and still believes the documents were accurate. He concludes that the documents are accurate be-

cause he personally does not hold an interest adverse to the estate and because he has not represented the Collinses since the Chapter 11 filing. Specifically, he insists that he has represented the Debtor and denies representing the interest of both parties' while negotiating a final settlement of lawsuits and the sale of the Debtor's property. He further testified:

"Over the years 99% of my representation was for the corporation. Does that mean the Collinses have not benefitted by my representation of the corporation? No it doesn't. Obviously, when you have two shareholders, obviously what helps the corporation will help the shareholders. Every thing I have done in these proceedings have been for the benefit of the corporation. I would also agree that has been substantially beneficial to the Collinses."

I agree with Mr. Hockensmith's assertion that the fact that the settlement of the various lawsuits against Areaco may have benefitted the Collinses does not, without additional evidence, prove that Mr. Hockensmith labored under a conflict of interest which would render him ineligible for employment under section 327(a) of the Bankruptcy Code. He also correctly points out that in a small, closely-held corporation whatever is good for the corporation is usually good for the stockholders. However, the fact remains Mr. Hockensmith failed to fully inform the creditor community and the U.S. Trustee of his past representation of the Collinses who may have interests adverse to the estate. Although I accept Mr. Hockensmith's testimony that he actually believed that he only represented the Debtor during the course of the Chapter 11, his failure to explicitly explain that to the Collinses and other parties of interest led to further confusion as to whom he actually represented. Art Collins and Donald L. Nolton testified that it was their belief Hockensmith represented the Collinses during the negotiation of the Debtor's final settlement. Under these circumstances it is reasonable to reduce Mr. Hockensmith's fee by thirty-three percent. In addition, before applying the one-third reduction, his fee request for the period of October 1 through December 8, 1992 shall be deceased by $1,860.00 to $2,700.00, which represents the additional time expended in revising and correcting his previous fee applications in compliance with the Court's previous order.[7] Accordingly, Mr. Hockensmith is allowed a fee of $29,066.31, plus expenses of $2,037.58, less a retainer of $7,219.93:

| REQUESTED FEES | LESS 33% | ALLOWED | EXPENSES |
|---|---|---|---|
| $ 4,000.00 | $ 1,320.00 | $ 2,680.00 | $ 500.00 |
| 27,623.32 | 9,115.70 | 18,507.62 | 529.41 |
| 9,059.24 | 2,989.55 | 6,069.69 | 638.98 |
| 2,700.00 | 891.00 | 1,809.00 | 369.19 |
| $43,382.56 | $14,316.25 | $29,066.31 | $2,037.58 |

With the exception of the objection to duplication of legal services, all other objections were resolved by the filing of Mr. Hockensmith's Second Response, which set forth his work with sufficient detail as to render the remaining objections moot. Since it was necessary for the Debtor's attorneys to confer, it is difficult if not impossible to determine the extent of any duplicated efforts. However, having reviewed his time records I find that the thirty-three percent reduction in allowed fees is sufficient to compensate the estate for any duplication of efforts that existed as well as the other infractions previously discussed.

7. See footnote 4.