In re Farideh MEHDIPOUR, Debtor.

Farideh MEHDIPOUR, Appellant,

v.

MARCUS & MILLICHAP, and U.S. Trustee, Appellees.

BAP No. CC–95–2279–JHA1.
Bankruptcy No. LA–95–15005–ES.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted July 24, 1996.

Decided Oct. 16, 1996.

**476**

Paul M. Brent, Santa Monica, CA, for Farideh Mehdipour.

James B. Yobski, Los Angeles, CA, for Marcus & Millichap, Inc.

Before: JONES, HAGAN, and ALLEY[1], Bankruptcy Judges.

### *OPINION*

JONES, Bankruptcy Judge:

### I. FACTS

The debtor Farideh Mehdipour ("Debtor") filed for chapter 11 bankruptcy relief on February 27, 1995.[2] The debtor employed Marcus & Millichap ("M & M") as a real estate broker to locate a buyer for the estate's largest asset, an apartment building located in Santa Monica, California (the "Property"). Tony Azzi ("Azzi"), the real estate agent for M & M, presented a buyer, Dr. Rothman ("Rothman"). On March 20, 1995, the debtor signed an agreement to sell the property to Rothman and to pay M & M a commission. Before the sale was consummated, Rothman requested that Azzi, who was also Rothman's broker, find partners for Rothman as the buyer of the property. Azzi approached Claudia Schumacher ("Schumacher"), who was Azzi's partner in an unrelated real estate transaction, and informed her of Rothman's interest in finding a partner. Schumacher requested time to make a decision as to whether to become partners with Rothman. In the interim, Azzi loaned Rothman $40,000 for the escrow deposit in exchange for a promissory note. On April 18, 1995, Schumacher formed a partnership with Rothman to purchase the property and repay Azzi with a note for $40,000.

On May 5, 1995, the debtor filed a motion for an order authorizing the sale of the property. On May 9, 1995, the debtor filed an application for employment of Azzi and M & M as the real estate broker in connection with the sale. Debtor's counsel states that he subsequently became informed that Azzi had a proprietary interest in the property and requested that the bankruptcy court not sign the order employing Azzi or M & M. The debtor then withdrew the application to employ M & M. On June 20, 1995, Azzi loaned an additional $70,000 to Schumacher which was deposited in escrow in exchange

for a promissory note. The property was sold pursuant to an order of the court and the sale closed on June 23, 1995.

On August 15, 1995, M & M filed its motion to employ itself as the real estate broker for the debtor pursuant to § 327 and requested payment of the commission. The United States Trustee filed a response to M & M's motion stating that the Trustee had no objection to M & M's employment because M & M's efforts substantially benefitted the estate. On September 5, 1995, the court held that M & M did not have standing to bring its motion. The bankruptcy court informed M & M that it should file a request for payment of the commission as an administrative expense pursuant to § 503(b). On September 15, 1995, M & M filed a § 503(b) motion which was heard on October 10, 1995. The bankruptcy court found that the efforts of M & M had benefitted the estate because the sale netted the estate $300,000 exclusive of commission fees, and that the property sold for fair market value. Further, the sale of the property enabled the debtor to pay off all secured creditors as well as all or substantially all unsecured creditors and administrative expenses. The court stated that it was not clear that M & M had any participatory interest as a purchaser and that the loans actually facilitated the sale. The court found that M & M did not fully disclose all of the facts surrounding the sale and the loan and sanctioned M & M 10% of its commission. The bankruptcy court awarded M & M $60,750, which was 90% of its commission. This award is the subject of the current appeal. At the hearing, the debtor orally requested a stay pending appeal which was denied.

On February 7, 1996, the debtor filed a motion to dismiss the chapter 11 case which was granted. The order of dismissal required the debtor to pay all creditors within ten days of the entry of the order. The debtor appealed the order of dismissal in another appeal. The debtor did not obtain a stay of the order of dismissal. In the order

---

1. The Honorable Frank R. Alley III, Bankruptcy Judge for the District of Oregon, sitting by designation.

2. Unless otherwise indicated, all references to Chapters, Sections and Rules are to the Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.*, and to the Federal Rules of Bankruptcy Procedure, Rules 1001, *et seq.*

of dismissal, the bankruptcy court stated that it did not retain jurisdiction over the appeal of the award to M & M, except to the extent that this panel orders the bankruptcy court to make further findings.

## II.  ISSUE

Did the bankruptcy court err in awarding real estate brokerage fees to M & M as an administrative expense when the court had not previously authorized the employment of M & M?

## III.  STANDARD OF REVIEW

■■■  We review a bankruptcy court's award of fees to professionals for abuse of discretion.  *In re Park–Helena Corp.,* 63 F.3d 877, 880 (9th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 712, 133 L.Ed.2d 667 (1996); *In re Film Ventures Int'l., Inc.,* 75 B.R. 250, 253 (9th Cir. BAP 1987).  We review the bankruptcy court's findings of fact for clear error and the court's conclusions of law de novo.  *Park–Helena,* 63 F.3d at 880 (citing *In re United States Trustee,* 32 F.3d 1370, 1372 (9th Cir.1994)).

## IV.  DISCUSSION

### A.  Mootness

■■■  We first note that M & M argues that this appeal is moot because the debtor failed to obtain a stay of the order dismissing the bankruptcy case, and the order of dismissal provided that all creditors had to be paid within a ten day period.  Mootness is a judicial doctrine which developed from "the general rule that the occurrence of events which prevent an appellate court from granting effective relief renders an appeal moot, and the particular need for finality in orders regarding stays in bankruptcy."  *Algeran, Inc. v. Advance Ross Corp.,* 759 F.2d 1421, 1424 (9th Cir.1985).  Thus, an appeal must be dismissed as moot if the appellate court cannot grant effective relief.  However, the debtor's failure to obtain a stay of the order of dismissal does not preclude this panel from granting effective relief in this appeal.  The order of dismissal merely outlined a time period for payment of creditors.  Our decision determines whether or not the debtor

must pay M & M's commission as ordered by the bankruptcy court.  This is effective relief.  The timing of any payment to M & M does not prevent this panel from granting effective relief.  M & M does not argue that distributions have been made to third parties over whom this court lacks jurisdiction.  Any relief that this panel grants will only concern the parties to this appeal.  We see no reason why we cannot grant effective relief.  This appeal is not moot.

### B.  Payment of Commission As An Administrative Expense

■■■  Section 327(a) prohibits the employment of professionals who hold or represent an interest adverse to the estate and who are not disinterested.  The bankruptcy court does not have authority to allow the employment of a professional in violation of § 327, and the employment is void *ab initio. In re EWC, Inc.,* 138 B.R. 276, 281 (Bankr. W.D.Okla.1992).  The ultimate decision as to whether there is a disqualifying conflict or adverse interest lies within the discretion of the court.  *In re B.E.S. Concrete Prods., Inc.,* 93 B.R. 228, 236 (Bankr.E.D.Cal.1988).  Any professional who the court determines to hold or represent an interest adverse to the estate or who is not disinterested is not an officer of the estate during the time of conflict and must be denied compensation for services performed during the conflict pursuant to § 330.  *EWC,* 138 B.R. at 281.  However, the bankruptcy court has discretion to award or deny compensation for services performed outside of a conflict.  *Id.* at 282.  The trial court is in the best position to resolve disputes over professional fees.  *In re Film Ventures Intern., Inc.,* 75 B.R. 250, 253 (9th Cir. BAP 1987).  The court is not required to deny fees for work actually performed.  *Id.*

■■■  Courts may allow compensation for professional services under § 503(b)(1)(A) as administrative expenses if the services provided by a disinterested professional were necessary to preserve the estate.  *EWC,* 138 B.R. at 283.  Section 503(b)(1)(A) provides:

(b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—

(1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case.

11 U.S.C. § 503(b)(1)(A) (1994). Compensation under § 503 does not allow the professional to side step the requirements of § 327 and § 330—the professional must still be disinterested and not hold any adverse interests. *EWC*, 138 B.R. at 283. Further, in order for the court to grant compensation under § 503, the services "must benefit all the creditors, be necessary for a successful reorganization, and generally arise from operating the estate in the overall interests of the creditors." *Id.*

■■■ Usually compensation or administrative expenses cannot be granted for professional services unless the court has authorized the employment prior to the performance of the services. *In re Shirley*, 134 B.R. 940, 943–44 (9th Cir. BAP 1992). Indeed, we held in *In re Weibel, Inc.*, 176 B.R. 209, 213 (9th Cir. BAP 1994), that § 503 could not serve as a basis for professional fees where the professional did not first obtain court approval of employment. However, the panel in *Weibel* also stated that a professional may receive court approval of employment "nunc pro tunc" where the professional did not receive prior approval, as long as such after-the-fact court approval is limited to exceptional circumstances. *Id.* at 213 (citing *In re THC Financial Corp.*, 837 F.2d 389, 392 (9th Cir.1988)). Applying for nunc pro tunc approval does not alleviate the professional from meeting the requirements of § 327; the professional still must show that it was disinterested. *Id.* The Ninth Circuit allows retroactive (nunc pro tunc) awards of fees for services rendered without prior court approval where: (1) the applicant has a satisfactory explanation for the failure to receive prior judicial approval; and (2) the applicant has benefitted the estate in some significant manner. *B.E.S. Concrete*, 93 B.R. at 231. These strict requirements are not to be taken lightly "lest it be too easy to circumvent the statutory requirement of prior approval." *Id.* The ultimate decision rests in the discretion of the court. *Id.*

■■■ This is a case of exceptional circumstances under which M & M meets the Ninth Circuit requirements for retroactive compensation as enunciated in *THC Financial.* M & M could not receive prior judicial approval because the debtor withdrew the application for employment of M & M and the bankruptcy court denied M & M's own application for employment on the grounds that M & M did not have standing to file such an application. In addition, the U.S. Trustee filed the "Position of United States Trustee" to M & M's motion in which the U.S. Trustee stated that it had no objection to the employment and payment of commission. M & M availed itself of every potential method for obtaining court approval of its employment. After its application was denied, M & M's only recourse was to apply for fees pursuant to § 503. In fact, the bankruptcy court advised M & M to file an application for compensation under § 503(b) after the court erroneously held that M & M had no standing to file a § 327 application for employment.

■■■ Section 327 does not, by its terms, limit standing of a professional to seek employment. The trustee or debtor in possession is usually the party who files an application to employ a professional pursuant to Rule 2014. However, the professional should be able to apply for court approved employment where it has been hired by the trustee or debtor in possession, and was assured that court approval would be sought. When the trustee or debtor in possession fails to seek court approval and the professional has performed services which benefit the estate based on the assurance that court approval would be sought, the professional should have standing to seek nunc pro tunc approval of employment. This ruling is not inconsistent with § 327 or Rule 2014[3] and

---

3. Such a ruling would not be inconsistent with Rule 2014 where the professional was actually hired by the trustee or debtor in possession and was assured that court approval would be sought. Rule 2014 should not be construed as

preventing professionals from acting on their own behalf where the trustee later refuses to apply for court approved employment. Otherwise, the trustee would receive a windfall by employing professionals, assuring the profession-

would protect the debtor or trustee from receiving a windfall from the good faith efforts of a professional hired by the trustee or debtor in possession who rendered beneficial services to the estate.

Furthermore, such a ruling is consistent with the Ninth Circuit case of *In re Atkins*, 69 F.3d 970 (9th Cir.1995), in which the debtor hired accountants on an emergency basis to perform services for the estate. The accountants relied on the debtor's assurances that a § 327 application authorizing their employment would be filed, but the debtor later refused to file the application. The accountants filed their own application for nunc pro tunc employment which was approved by the court, over the debtor's objections. *Id.* at 976. The bankruptcy court found that the accountants had performed beneficial services to the estate and were led to believe that the debtor would seek court approval of their employment. *Id.* at 976–78. The Ninth Circuit held that this was a satisfactory explanation for failure to receive prior judicial approval, and affirmed the bankruptcy court's order approving the employment and awarding fees. *Id.* at 979.

In this case, the debtor filed a § 327 motion for approval of employment and payment of M & M's commission. The debtor later withdrew the application. M & M performed services based on the belief that court approval would be obtained and their commission paid. Furthermore, the services provided by M & M significantly benefitted the estate. M & M found a buyer for the estate's largest asset and facilitated the sale by loaning money to the buyer. The sale took place and the estate was able to pay all or substantially all of the creditors and administrative expenses. M & M had a satisfactory explanation for not obtaining prior court approval and the services performed significantly benefitted the estate. The bankruptcy court's award of fees was *de facto* approval of M & M's employment.

Further, the court made a finding that M & M was disinterested and did not hold a participatory interest in the buyer. The bankruptcy court was in the best position to make the determination as to M & M's disinterestedness. We agree with the court's finding. The fact that Azzi made loans to the buyers and had an unrelated partnership with the buyers does not automatically lead to the conclusion that M & M was not disinterested. The property was sold for fair market value. M & M had no interest as a buyer. Thus, we agree with the bankruptcy court that M & M was entitled to compensation under § 503 for services performed.

### C. Violation Of Disclosure Duty

Pursuant to § 327, a professional has a duty to make full, candid and complete disclosure of all facts concerning his transactions with the debtor. *See Park–Helena*, 63 F.3d at 881; *In re Plaza Hotel Corp.*, 111 B.R. 882, 883 (Bankr.E.D.Cal.), *aff'd*, 123 B.R. 466 (9th Cir. BAP 1990). Professionals must disclose all connections with the debtor, creditors and parties in interest, no matter how irrelevant or trivial those connections may seem. *EWC*, 138 B.R. at 280. The disclosure rules are not discretionary. *Id.* The duty to disclose is not vitiated by negligent or inadvertent omissions. *Park–Helena*, 63 F.3d at 881. A court may sanction a professional for disclosure violations regardless of actual harm to the estate. *Film Ventures*, 75 B.R. at 253; *EWC*, 138 B.R. at 280.

Moreover, California state law provides that brokers have a fiduciary duty to make full and complete disclosure of all material facts which might influence the principal's decision to enter into a transaction. *Ziswasser v. Cole & Cowan, Inc.*, 164 Cal. App.3d 417, 421, 210 Cal.Rptr. 428 (Cal.Ct. App.1985). A broker's failure to disclose the

---

al that a § 327 application would be made, and then refusing to do so. In such a case, the trustee would have received services at no cost which benefitted the estate, and the professional would be helpless to act. Bankruptcy courts have equitable powers to allow such applications, *see In re Atkins*, 69 F.3d 970, 973 (9th

Cir.1995), especially in this case where the debtor filed an application, but later withdrew it, and the United States Trustee filed a "Position of the United States Trustee" which stated that there was no objection to M & M's compensation because M & M's efforts substantially benefitted the estate.

fact that he loaned part of the purchase price to the buyer is a breach of fiduciary duty. *Id.* at 419, 210 Cal.Rptr. 428. However, not all breaches of fiduciary duty based on disclosure violations deprive a broker of compensation. *Id.* at 425, 210 Cal.Rptr. 428. A broker will only be deprived of his commission when there is a breach of fiduciary duty which involves intentional disloyalty or bad faith. *Id.* The California appellate court in *Ziswasser* found that a broker had breached his fiduciary duty by not disclosing to the principal that the broker had loaned part of the purchase price to the buyer. *Id.* However, the court held that the disclosure violation did not warrant a forfeiture of the broker's commission. *Id.*

It is clear that California courts have discretion in determining whether a broker must forfeit his commission, despite a failure to disclose a material fact. It stands to reason that bankruptcy courts retain this same discretion. The bankruptcy court's sanction of 10% of M & M's fees was within its discretion. *Park–Helena,* 63 F.3d at 882. The court found that M & M was not completely candid in its disclosure of Azzi's connections with the buyers and the terms of the loans Azzi made to the buyers. Even though those connections facilitated the sale of the property which benefitted the estate, both Azzi and M & M had a duty as professionals before the court to make full disclosures of all facts, no matter how trivial or irrelevant they thought those facts to be. As such, the sanction was proper and we affirm.

## V. CONCLUSION

The bankruptcy court properly exercised its discretion in finding that M & M was a disinterested professional entitled to retroactive compensation under § 503(b). However, M & M violated the disclosure requirements of the Bankruptcy Code, and was properly sanctioned for such violation. Accordingly, **WE AFFIRM.**