**In re TRIPLE STAR WELDING, INC., Debtor.**

**Louis A. Movitz, Chapter 7 Trustee, Appellant,**

v.

**Barton L. Baker, Appellee.**

**BAP No. AZ–04–1442–MOSZ.**

**Bankruptcy No. 02–00346–YUM–JMM.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued Feb. 24, 2005.

Submitted March 18, 2005.

Filed April 28, 2005.

Terry A. Dake, Phoenix, AZ, for Louis A. Movitz, trustee.

Barton L. Baker, Yuma, AZ, appellant pro se.

Before: MONTALI, SMITH and ZIVE,[1] Bankruptcy Judges.

## *OPINION*

MONTALI, Bankruptcy Judge.

This appeal involves a fee award to debtor's counsel despite his nondisclosure of numerous facts that potentially render him ineligible for employment or compensation. The bankruptcy court has broad discretion to approve employment and award fees after the true facts are known, but not when the attorney does not make a full, candid, and complete disclosure.

The bankruptcy court also applied an incorrect legal standard to the nondisclosure issues by requiring an adversary proceeding. The attorney did not disclose his receipt of a prima facie preference, and that or other nondisclosures or conflicts of interest may be a sufficient basis to reduce or deny his compensation whether or not the preference turns out to be avoidable. In addition, because the preference claim is facially plausible the bankruptcy court should not have awarded any compensation before resolving the preference issues.

**1.** Hon. Gregg W. Zive, Chief Bankruptcy Judge for the District of Nevada, sitting by designation.

For each of these independent reasons, we REVERSE and REMAND.[2]

## I. INTRODUCTION

Chapter 7 trustee Louis A. Movitz ("Trustee") appeals from the bankruptcy court's order awarding fees to Barton L. Baker, Esq. ("Baker"), for his services as Chapter 11 counsel to debtor Triple Star Welding, Inc. ("Debtor"), prior to conversion to Chapter 7.[3] Trustee objected that Baker was not disinterested because he was a key player in what Trustee viewed as a pre-petition fraudulent transfer of Debtor's assets to a newly formed affiliate and because Baker received what Trustee believes are avoidable preferential payments of his legal bills. Trustee also objected that Baker did not disclose these possible preferences and that some of his legal bills remained unpaid on the date when Debtor filed its voluntary Chapter 11 petition, leaving him a creditor of Debtor.

The bankruptcy court ruled that the pre-petition transfer of Debtor's assets was in essence a proposed sale to be accomplished through a plan of reorganization and that this was unorthodox but not sinister or illegal. It declined to rule that Debtor's pre-petition payments to Baker were preferential without an adversary proceeding, did not otherwise discuss the nondisclosure issues, and awarded Baker his requested fees and costs. Trustee timely appealed.

## II. FACTS

Debtor was an air conditioning and metal fabricating contractor. Its primary business was rebuilding vegetable cooling facilities in Arizona and California. Debt-or ran into trouble when it purchased 80 acres of real property adjacent to its existing shop, located on ten acres of property where its founder Jorge Cabrera ("Cabrera") also lives. Debtor defaulted on several installment payments and lost the property at a trustee's sale in December, 2001. Debtor also fell behind on payroll taxes and material supplier accounts. Approximately ten judgments were entered in various courts, followed by attachments and garnishments.

Baker tried to negotiate consensual resolutions with Debtor's creditors. After Debtor failed to pay Baker's invoices he told Debtor that he would stop work unless he was paid. On December 18 and 28, 2001, Baker received payments of $1,676.50 and $1,000.00 (the "Pre–Petition Payments"), leaving a balance of $2,677.90 (the "Balance Due").

Negotiations with creditors did not produce the results for which Debtor had hoped. On or about March 1, 2002, Debtor entered into a sales agreement (not in the excerpts of record), shut down its business, and transferred its operating assets to a new corporation, American Mechanical Integrated Systems, Inc. ("AMIS"), formed by two of Debtor's three principals and its comptroller. Baker orchestrated this transaction, and the transfer occurred before Debtor filed a voluntary Chapter 11 petition on March 27, 2002 (the "Petition Date").

1. *Partial disclosures regarding Baker's employment*

Just over two weeks after the Petition Date Baker filed an Application for Appointment of Counsel (the "Employment

---

2. We publish this disposition to stress to the bar the importance of full and timely disclosure of pertinent facts, and compliance with all procedural rules, as part of the employment and compensation of professionals in bankruptcy cases.

3. Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330, and to the Federal Rules of Bankruptcy Procedure, Rules 1001–9036.

Application") requesting that he be appointed as Debtor's counsel.[4] The Employment Application was signed by Baker himself, not by Debtor, and it contains none of the representations regarding disinterestedness required by Rule 2014(a),[5] nor does it mention Baker's involvement in the sale to AMIS, the Pre–Petition Payments, or the Balance Due to Baker, although it does state that Baker will charge $200.00 per hour and "has not received a prepetition retainer."

The bankruptcy court's docket does not reflect any separate verified statement required by the final sentence of Rule 2014(a) ("Rule 2014 Statement") and the excerpts of record contained none. Nevertheless, at oral argument before us both Baker and Trustee's counsel said that they believed Baker did file a Rule 2014 Statement. After re-examining the docket and excerpts and finding nothing we issued an order giving Baker ten days in which to produce a file stamped copy of the document that he contends is his Rule 2014 Statement. Baker served an "Appellee's Notice of Filing [of] Rule 2014 Statement" attached to which was another copy of his Employment Application, but no Rule 2014 Statement. We thus analyze this case under the presumption that Baker failed to comply with Rule 2014 and the bankruptcy court did not independently enforce it.

Baker did file other documents with the bankruptcy court that contained partial disclosures of his connections with Debtor and fee arrangements. On April 26, 2002, he filed a Disclosure of Compensation of Attorney for Debtor (the "Rule 2016 Disclosure")[6] which states:

**4.** Section 327(a) provides that a debtor in possession, "with the court's approval, may employ one or more attorneys ... that do not hold or represent an interest adverse to the estate, and that are disinterested persons," to represent or assist the debtor in carrying out its duties under the Bankruptcy Code. 11 U.S.C. § 327(a). Section 1107(b) states, "Notwithstanding section 327(a) of this title, a person is not disqualified for employment under section 327 of this title by a debtor in possession solely because of such person's employment by or representation of the debtor before the commencement of the case." 11 U.S.C. § 1107(b). Section 101(14) states, " 'disinterested person' means [a] person that—(A) is not a creditor, an equity security holder, or an insider; ... and (E) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor ... or for any other reason[.]" 11 U.S.C. § 101(14).

**5.** Rule 2014(a) provides, in full:
Rule 2014. **Employment of Professional Persons**
(a) Application for an order of employment
An order approving the employment of attorneys, accountants, appraisers, auctioneers, agents, or other professionals pursuant to § 327, § 1103, or § 1114 of the Code

shall be made only *on application of the trustee* [or debtor in possession acting as trustee, per 11 U.S.C. § 1107(a) ] or committee. The application shall be filed and, unless the case is a chapter 9 municipality case, a copy of the application shall be transmitted by the applicant to the United States trustee. The application shall state the specific facts showing the necessity for the employment, the name of the person to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, *all of the person's connections with the debtor, creditors, any other party in interest,* their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee. *The application shall be accompanied by a verified statement of the person to be employed setting forth the person's connections with the debtor, creditors, any other party in interest,* their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.
Fed. R. Bankr.P. 2014(a) (emphasis added).

**6.** Rule 2016(b) provides, in relevant part:

Pursuant to 11 U.S.C. § 329(a) and Bankruptcy Rule 2016(b), I certify that I am the attorney for [Debtor] and that compensation paid to me within one year before the filing of the petition in bankruptcy, or agreed to be paid to me, for services rendered or to be rendered on behalf of [Debtor] in contemplation of or in connection with the bankruptcy case is as follows:

> For legal services, I have agreed to accept $200.00 per hour
> Prior to the filing of this statement I have received $5000.00
> Balance Due $_____

The Rule 2016 Disclosure does not state whether the $5,000.00 was a retainer for future services or instead consisted of one or more payments for past services. In particular, the document does not disclose that one of the Pre–Petition Payments, for $1,000.00, was inside the 90 day preference period of Section 547(b)(4)(A) and was in payment of an antecedent debt.

Debtor's Statement of Financial Affairs ("SFA") refers to the $5,000.00 payment to Baker and, under date of payment, states "various." It gives no further details.

On the same day as the SFA and the Rule 2016 Disclosure were filed the bankruptcy court filed an order granting the Employment Application.

On July 11, 2002, Debtor filed a plan of reorganization (the "Plan") and disclosure statement (the "Disclosure Statement"). The Disclosure Statement's discussion of administrative claims states that "no retain[er] has been paid" to Baker. The Disclosure Statement and the portions of the Plan in the excerpts of record (collectively, the "Plan Documents") do not otherwise discuss the Pre–Petition Payments and Balance Due to Baker. Their discussion of possible preference recoveries does not include any analysis of why the Pre–Petition Payments would not be avoidable preferences.

### 2. *Partial disclosures regarding AMIS transaction*

In the Employment Application Baker states that the case will be a small business Chapter 11 liquidation case. He refers to the sale of Debtor's assets as if that had not already occurred, stating that Debtor "proposes to sell the assets of the

Rule 2016. **Compensation for Services Rendered and Reimbursement of Expenses**

\*　　\*　　\*　　\*　　\*　　\*

(b) Disclosure of compensation paid or promised to attorney for debtor

Every attorney for a debtor, whether or not the attorney applies for compensation, shall file and transmit to the United States trustee within 15 days after the order for relief, or at another time as the court may direct, the *statement required by § 329 of the Code* including whether the attorney has shared or agreed to share the compensation with any other entity....

Fed. R. Bankr.P. 2016(b) (emphasis added).

Section 329 provides, in full:

§ 329. **Debtor's transactions with attorneys**

(a) Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation.

(b) If such compensation exceeds the reasonable value of any such services, the court may cancel any such agreement, or order the return of any such payment, to the extent excessive, to—

(1) the estate, if the property transferred—

(A) would have been property of the estate; or

(B) was to be paid by or on behalf of the debtor under a plan under chapter 11, 12, or 13 of this title; or

(2) the entity that made such payment.

11 U.S.C. § 329.

business ... to gain fair market value for the business assets as opposed to liquidation value."

On April 25, 2002, Baker signed and filed a Case Management Report (the "Baker Report"). The Baker Report states that Debtor "plans" to liquidate its business by selling its operating assets (but not its receivables) to AMIS for "fair market value" in exchange for AMIS' commitment to fund the Plan. The Baker Report reveals that AMIS is a new corporation formed by two of Debtor's three principals. Debtor's SFA, filed the next day, lists the sale to AMIS but under "date" there is no information and under "relationship to debtor" it states "NONE." (Emphasis in original.)

Several months after the Baker Report, Debtor filed the Plan Documents which disclose that the sale to AMIS has already occurred (though no date is mentioned) and state that "Debtor requests the Court to approve the AMIS sale as part of the confirmation hearing." The Disclosure Statement mentions that AMIS has promised to pay $150,000.00 for Debtor's operating assets but does not state the terms of payment. An executed unsecured promissory note, not included in the Plan Documents, provides for AMIS to make quarterly payments to Debtor of "$20,000.00 plus interest" at 6.5%, starting March 31, 2002.[7] Under the Plan these funds plus Debtor's receivables (to be collected by AMIS and turned over to Debtor) would go to pay secured creditors. AMIS would also pay a 5% dividend (estimated at approximately $26,000.00) to general unsecured creditors. AMIS' two principals would pay approximately

$260,000.00 in priority taxes over five years through AMIS "[d]ue to potential successor liability and personal liability."

3. *Appointment of Chapter 11 trustee, and later conversion to Chapter 7*

On June 4, 2002, the United States Trustee ("UST") filed a motion to convert the case to Chapter 7 or, alternatively, to appoint a trustee or examiner. UST questioned the timing and the consideration for the "insider sale" to AMIS, suggested that a Chapter 7 case would be more efficient, and argued that in a Chapter 11 case "the [D]ebtor would essentially be responsible for collecting the note from itself." Debtor responded that it "openly admits and discloses that the sale of [its] hard assets to [AMIS] is an insider transaction" but that the sale price was structured "well over" fair market value "to overcome objections such as those raised by [UST]."

On July 22, 2002, the bankruptcy court ordered the appointment of a Chapter 11 trustee. Trustee was appointed and on August 29, 2002, he filed a combined report and motion to convert the case to Chapter 7 (the "Conversion Report"). The Conversion Report reiterated UST's concerns, pointed out that AMIS had not made any payments or provided any financial information to Debtor, and added:

Further, despite the assertion that the transaction with [AMIS] was fair, that is clearly false. [D]ebtor gave up all of its assets in exchange for an unsecured promise to pay. Those assets included not only assets already pledged to [a bank], but at least two vehicles [and perhaps as many as 13] on which the

7. According to Trustee, Debtor's founder Cabrera testified for Debtor at the Section 341 meeting of creditors on May 24, 2002, that the initial payment was not due from AMIS until July, 2002. It is unclear whether this testimony was false or inaccurate or if instead the terms of sale to AMIS had been amended

(although no amended documents appear in the excerpts of record). It is also unclear whether the promissory note was before the bankruptcy court—it is included in Trustee's excerpts of record without being attached to any pleading—but Baker has not objected to its inclusion in the excerpts of record.

bank did not have a lien. [Footnote omitted.] [D]ebtor's records reflect that those [two] vehicles alone are worth approximately $20,000.00. Giving up $20,000.00 of unencumbered assets, in exchange for an unsecured promise to pay, is anything but fair. It is fraudulent.

... Moreover, the disclosure statement filed by [D]ebtor indicates that [D]ebtor's counsel expects to incur another $30,000.00 in fees to obtain confirmation and consummation of the plan. Thus, there is no meaningful likelihood that unsecured creditors will ever receive anything if this case remains in Chapter 11.

Debtor filed a response arguing that Debtor had disclosed the sale to AMIS in the Baker Report, that "[n]o bill of sale has been executed and no action taken to put anything beyond the reach of creditors or the Trustee," and that Debtor was seeking judicial approval of the sale because it "has always had the ability to set the sale to [AMIS] aside." [8] After a reply by Trustee and a hearing the bankruptcy court issued an order, on October 29, 2002, for conversion to Chapter 7. Meanwhile, two things happened: on September 26, 2002, AMIS filed its voluntary Chapter 11 petition (Arizona, Case No. 02–01273–YUM–JMM), and on August 16, 2002, Baker filed his application for fees (the "Fee Application").

### 4. *Baker's Fee Application*

The Fee Application recites that Baker spent 33.75 hours on administrative matters including preparation of Debtor's

bankruptcy schedules and SFA, 12.5 hours on negotiations with secured creditors, 8.5 hours on two preference actions and receiving funds returned by creditors, and 19.5 hours on preparation of the Plan Documents. Baker seeks a total of $12,993.75 in fees and $950.00 in costs.

The Fee Application does not address the conflicts of interest involving AMIS alleged in UST's motion to convert and Trustee's Conversion Report, nor does it discuss the Pre–Petition Payments or the Balance Due except to state:

Applicant did not receive a retainer fee prior to filing this case. There were pre-petition monthly statements sent to Debtor and in the year prior to filing Debtor paid approximately $8,000.00 [sic] to applicant.[9]

Trustee filed an objection arguing that Baker was a key player in a fraudulent conveyance and Baker had taken no steps to enforce AMIS' promise to pay Debtor $20,000.00 per month. After discovering the timing and nature of the Pre–Petition Payments, Trustee filed a supplement to his objection (the "Objection Supplement") arguing that those payments appeared to be preferences and that Baker's failure to reveal the relevant facts to the Court requires the disallowance of his fee application.

Baker filed a supplemental reply acknowledging that the Pre–Petition Payments (now said to be either $4,908.00 or $2,676.50 [10]) were paid not as a retainer but for past services and "to induce further work from the attorney." Baker nevertheless argued that he would have defenses to any preference avoidance action.

---

**8.** Baker has not explained how he could make such a concession on behalf of AMIS nor how Trustee could actually set aside the sale to AMIS, particularly when AMIS had already dissipated some of the transferred assets.

**9.** The Fee Application offers no explanation for the disparity between this $8,000.00 figure and the $5,000.00 stated both in Baker's Rule 2016(b) Disclosure and in Debtor's SFA.

**10.** Baker confirmed at oral argument before us that the correct figure for payments he received within one year prior to the Petition Date is $2,676.50, as opposed to $4,908.00 of payments in the calendar year 2001. He mistakenly used an approximation of the latter amount in his Rule 2016 Disclosure ($5,000.00) and in Debtor's SFA ($5,000.00). The $8,000.00 referred to in his Fee Application appears to be a further mistake. *See generally* 11 U.S.C. § 329(a) (requiring disclo-

As for the Balance Due, Baker's declaration in support of his supplemental reply states that he "simply wrote off the balance due at [the] time" of his last invoice to Debtor, on January 10, 2002. That invoice, however, shows a "Balance due" of $2,677.90 without any indication that the balance was written off.[11]

Baker's Fee Application came on for hearing on March 12, 2004. Trustee's counsel noted that the AMIS bankruptcy case was probably administratively insolvent, having been converted to Chapter 7 for non-payment of post-petition taxes on January 26, 2004, and notwithstanding Baker's claims that the sale to AMIS could be set aside at any time Trustee had been unable to establish this and was likely to recover nothing from the AMIS estate.

### 5. The bankruptcy court's rulings

The bankruptcy court took the matter under advisement and, on August 6, 2004, filed a Memorandum Decision allowing all fees and costs in the Fee Application. That decision states:

> ... [T]rustee chooses policy as his battleground, asserting that [D]ebtor's pre-petition transfers [to AMIS], orchestrated by [D]ebtor's counsel, left little, if anything, for this [D]ebtor to reorganize.
>
> However, [the Plan] did clearly identify those transfers, and sought to merely convert the transferred assets into a stream of income which would then be paid to [D]ebtor's creditors. In essence, the plan was a sale plan, although accomplished in reverse order from what would be typical.

However unorthodox, novel, unusual or creative this course of events may be, or the subject of legitimate debate as to its efficacy, the court perceives nothing sinister or illegal in the method chosen. After all, neither [D]ebtor nor its counsel, upon filing, could expect that these events would not be noticed or scrutinized. Indeed, the court recalls, early in the case, inquiring of [D]ebtor's counsel about the very things that [T]rustee has raised, and that [D]ebtor's counsel candidly and openly explained what occurred and the reasons therefor.

On August 12, 2004, Trustee filed a Motion to Alter or Amend Ruling and for Additional Findings, requesting that the bankruptcy court specifically address the preference and disinterestedness issues. An order allowing Baker's fees and costs in full was filed on August 23, 2004. The same day, Trustee filed a Motion to Alter or Amend Order reiterating Trustee's request that the bankruptcy court address the issues raised in the Objection Supplement. The bankruptcy court issued an order (the "Reconsideration Order") stating:

> This court cannot determine preference issues in the context of a fee application. Such matters are in the nature of adversary proceedings to recover money or property. See Bankr.R. 7001(1).... If [D]ebtor's counsel has received preferential payments, such monies may be recovered after all claims and defenses have been fully aired. The court declines to rule on such important issues without an adversary proceeding. The grant of fees in this contested matter did not preclude [T]rustee from

---

sures of payments "made after one year before the date of the filing of the petition").

**11.** It is possible that Baker wrote off the fees later, and at oral argument before us Baker pointed to Debtor's schedules as evidence that he was not owed any money by Debtor as of the Petition Date. Although this might be true, and perhaps Baker's Declaration was just poorly phrased, we have found nothing in the excerpts of record to suggest that he presented such an explanation to the bankruptcy court and the only explanation he did give, in his declaration, is internally inconsistent.

bringing such an action should he desire to do so.

To the extent so clarified, the motion to alter or amend is GRANTED. The entry of this order thus ends the appeal tolling period ....

### III. ISSUES

1. May the bankruptcy court award fees absent a Rule 2014 Statement and full disclosure by Baker? [12]

2. Did the bankruptcy court apply the correct legal standard to determine disinterestedness and lack of an adverse interest when it ruled that it could not determine the preference issues absent an adversary proceeding?

3. Do the preference issues have to be resolved before Baker may be paid any compensation? [13]

### IV. STANDARDS OF REVIEW

■■■■ We review the bankruptcy court's decision to allow compensation for abuse of discretion. *Film Ventures Int'l, Inc. v. Asher (In re Film Ventures Int'l, Inc.)*, 75 B.R. 250, 253 (9th Cir. BAP 1987). A bankruptcy court necessarily abuses its discretion if it bases its ruling upon an erroneous view of the law or a clearly erroneous assessment of the evidence. The panel also finds an abuse of discretion if it has a definite and firm conviction that the bankruptcy court committed a clear error of judgment in the conclusion it reached. *Beatty v. Traub (In re Beatty)*, 162 B.R. 853, 855 (9th Cir. BAP 1994) (citations omitted). We review the bankruptcy court's conclusions of law and questions of statutory interpretation de novo, and factual findings for clear error. *Village Nurseries v. Gould (In re Baldwin Builders)*, 232 B.R. 406, 410 (9th Cir. BAP 1999).

### V. DISCUSSION

■■■■ Full disclosure is an essential prerequisite for both employment and

---

**12.** Trustee challenged Baker's award of compensation rather than seeking to set aside the order that authorized his employment. While we confine our decision to the issue presented we note that the reasons why the award of compensation was erroneous apply with equal force to the threshold question of whether Baker should have been employed in the first place.

**13.** Trustee argues on this appeal that even if Baker was disinterested his services provided no benefit to Debtor's estate and were not reasonably likely to render any benefit, citing *Leichty v. Neary (In re Strand)*, 375 F.3d 854 (9th Cir.2004). We do not address this issue because it was not raised before the bankruptcy court and Trustee has offered no reason why it should be considered on this appeal. *See generally Briggs v. Kent (In re Prof'l Inv. Props. of Am.)*, 955 F.2d 623, 625 (9th Cir. 1992) (describing rare circumstances in which arguments not raised before trial court can be raised on appeal).

Baker argues that he has an affirmative defense to any preference action because the Pre–Petition Payment of $1,000.00 was "a contemporaneous exchange—willingness to perform services for a $1,000.00 payment on account and in the ordinary course of business." Baker then cites not the contemporaneous exchange provisions of Section 547(c)(1) but the ordinary course provisions of Section 547(c)(2). 11 U.S.C. § 547(c)(1) and (2). He also cites a case that he characterizes as holding that pre-petition services directed at financial issues are not avoidable preferences (*In re Hargis*, 148 B.R. 19 (Bankr. N.D.Tex.1991)) and another dealing with whether pre-petition compensation is excessive under Section 329 (*In re Emco Enterprises, Inc.*, 94 B.R. 184 (Bankr.E.D.Cal.1988)). Trustee responds that Baker's preference defense would fail, because his bills do not reflect any new value after the Pre–Petition Payments were made, citing *Miniscribe Corp. v. Keymarc, Inc. (In re Miniscribe Corp.)*, 123 B.R. 86, 92–95 (Bankr.D.Colo.1991) (creditor's promise to continue doing business with debtor if it paid overdue bills was neither new value nor "ordinary course of business"). For the reasons described in the text we do not reach any of these issues.

compensation. The Ninth Circuit has stated:

> The bankruptcy court must ensure that attorneys who represent the debtor do so in the best interests of the bankruptcy estate. The court must ensure, for example, that the attorneys do not have interests adverse to those of the estate, that the attorneys only charge for services that benefit the estate, and that they charge only reasonable fees. To facilitate the court's policing responsibilities, the Bankruptcy Code and Federal Rules of Bankruptcy Procedure impose several disclosure requirements on attorneys who seek to represent a debtor and who seek to recover fees. The disclosure rules impose upon attorneys an independent responsibility. Thus, failure to comply with the disclosure rules is a sanctionable violation, even if proper disclosure would have shown that the attorney had not actually violated any Bankruptcy Code provision or any Bankruptcy Rule.
>
> * * * * * *
>
> The disclosure rules are applied literally, even if the results are sometimes harsh. Negligent or inadvertent omissions do not vitiate the failure to disclose. Similarly, a disclosure violation may result in sanctions regardless of actual harm to the estate.
>
> * * * * * *
>
> The disclosure requirements of Rule 2014 are applied as strictly as the requirements of Rule 2016 and section 329
> . . . .

*Neben & Starrett, Inc. v. Chartwell Fin. Corp. (In re Park–Helena Corp.)*, 63 F.3d 877, 880–81 (9th Cir.1995) (citations and quotation marks omitted).

In *Park–Helena* the Ninth Circuit affirmed the bankruptcy court's denial of the attorneys' "entire fee request" based on their nondisclosure of the "true source of the retainer"—the president of the debtor, rather than the debtor itself—and the firm's "connections" to the debtor's president arising from the same transaction. *Id.* at 880. The firm argued that because the president had borrowed funds from the corporate debtor his payment of the retainer was "in effect" a payment from the debtor, so the firm did not need to disclose the details of the source of funds. The Ninth Circuit rejected this argument:

> A fee applicant must disclose the *precise* nature of the fee arrangement, and not simply identify the ultimate owner of the funds.

*Id.* at 881 (citations and quotation marks omitted, emphasis added).

More generally we have stated:

> Pursuant to § 327, a professional has a duty to make *full, candid and complete disclosure* of all facts concerning his transactions with the debtor. Professionals must disclose all connections with the debtor, creditors and parties in interest, *no matter how irrelevant or trivial those connections may seem.* The disclosure rules are not discretionary.

*Mehdipour v. Marcus & Millichap (In re Mehdipour)*, 202 B.R. 474, 480 (9th Cir. BAP 1996) (citations omitted, emphasis added).

Once the true facts are known the bankruptcy court has considerable discretion in determining whether to disallow all, part, or none of the fees and expenses of a properly employed professional. *Film Ventures*, 75 B.R. at 253; *Law Offices of Nicholas A. Franke v. Tiffany (In re Lewis)*, 113 F.3d 1040, 1045–46 (9th Cir.1997).

Until proper disclosure has been made, however, it is premature to award fees for two reasons. First, the bankruptcy court cannot exercise its discretion to excuse nondisclosure unless it

knows what it is excusing. Second, employment is a prerequisite to compensation and until there is proper disclosure it cannot be known whether the professional was validly employed. *See First Interstate Bank of Nevada v. CIC Inv. Corp. (In re CIC Inv. Corp.)*, 175 B.R. 52, 55–56 (9th Cir. BAP 1994) (*"CIC I"*) (§ 327(a) "clearly states that the court cannot approve the employment of a person who is not disinterested" and "[b]ankruptcy courts cannot use equitable principles to disregard unambiguous statutory language").[14]

1. *The bankruptcy court cannot award Baker any of his requested fees absent full, candid, and complete disclosure*

■ Trustee argues that Baker is motivated to act for the benefit of Debtors'

principals at the expense of creditors and is not in fact disinterested. Trustee chiefly points to the terms of sale to AMIS and the allegedly preferential Pre–Petition Payments to Baker. We will not reach the merits of Trustee's arguments. Neither we nor the bankruptcy court can properly assess these matters and approve any of the requested fees in the absence of proper disclosure by Baker, starting with a verified disclosure of his "connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants" etc. Fed. R. Bankr.P. 2014(a). The Bankruptcy Rules do not give the bankruptcy court any discretion to waive the requirement of a Rule 2014 Statement. *See id.*

Our inquiry could end here. Little purpose would be served, however, if we were

---

**14.** If it turns out that the professional was not validly employed that is not necessarily the end of the inquiry. On the one hand, employment is a prerequisite for compensation under the Bankruptcy Code and Rules and the bankruptcy court cannot simply disregard those rules and instead award compensation under quantum meruit or other state law theories. *Law Offices of Ivan W. Halperin v. Occidental Fin. Group, Inc. (In re Occidental Fin. Group, Inc.)*, 40 F.3d 1059, 1062–63 (9th Cir.1994); *DeRonde v. Shirley (In re Shirley)*, 134 B.R. 940, 944–45 (9th Cir. BAP 1992).

On the other hand, employment sometimes can be retroactively authorized or authorized for part but not all of the time that a professional has worked for the estate. *See Atkins v. Wain, Samuel & Co. (In re Atkins)*, 69 F.3d 970, 973–76 (9th Cir.1995) (affirming retroactive employment in exceptional circumstances); *Mehdipour*, 202 B.R. at 478 (when professional has disqualifying conflict of interest for only some services, "the bankruptcy court has discretion to award or deny compensation for services performed outside of a conflict").

In addition, we held in one case that the bankruptcy court had discretion to award compensation for services performed in reliance on the order authorizing employment, before that order was reversed on appeal. *See First Interstate Bank of Nevada v. CIC Inv.*

*Corp. (In re CIC Inv. Corp.)*, 192 B.R. 549, 553–54 (9th Cir. BAP 1996) (*"CIC II"*). We note, though, that in *CIC II* the professional had "fully disclosed" its relevant connections and "all potential conflicts" at the outset (*id.*), and its lack of disinterestedness was not immediately clear (the courts were split on the issue). *CIC I*, 175 B.R. at 54–56. In this case, as we discuss below, Baker has not made proper disclosures and his employment was improperly authorized in the absence of a Rule 2014 Statement. These facts might require him to apply for retroactive employment, or perhaps bar his employment altogether. *Compare Mehdipour*, 202 B.R. at 478 (stating in dicta that employment "in violation of § 327" is "void ab initio") (citing *In re EWC, Inc.*, 138 B.R. 276, 281 (Bankr. W.D.Okla.1992)) *with Com–1 Info, Inc. v. Wolkowitz (In re Maximus Computers, Inc.)*, 278 B.R. 189, 194 (9th Cir. BAP 2002) (lack of Rule 2014 Statement "necessitates *vacating* the employment order") (emphasis added) *and id.* at 199 (Montali, J., concurring). *But cf. Kravit, Gass & Weber, S.C. v. Michel (In re Crivello)*, 134 F.3d 831, 838 (7th Cir.1998) (professional need only be "employed," not "validly" employed, to be eligible for compensation).

We express no further opinion on these issues. They can be addressed, if necessary, once the relevant facts are known.

to reverse the award of fees and remand so that Baker could file a Rule 2014 Statement disclosing perhaps no more than he has already disclosed, which he argues is sufficient and Trustee argues is not. For the sake of judicial economy, we will discuss the issues that the parties have briefed and argued, if only to point out that without proper disclosure those issues cannot be resolved.

 Three areas of concern involve Baker's relationship with AMIS and its principals, the Pre–Petition Payments, and the Balance Due to Baker. The excerpts of record have little information on these matters, and when Baker has made disclosures they have been characterized by a lack of timeliness, completeness, and candor:

* Debtor's SFA falsely states that AMIS' relationship to Debtor is "NONE" even though two of Debtor's three principals are also AMIS' principals. Baker's Employment Application says nothing about the conflict of interest implications. *See In re Perry,* 194 B.R. 875, 880 (E.D.Cal.1996) (waiver of conflict by non-debtor parties was insufficient and "[i]nformed consent could not be obtained" because "the real parties in interest in this case are the creditors, and that is not a waivable conflict").[15]

* There is no disclosure whether AMIS had its own counsel or whether, when Baker orchestrated the sale to AMIS, he was the only attorney involved.

* Proper disclosure could shed light on why Baker orchestrated the sale to AMIS (including the unencumbered trucks) as an unsecured obligation and then apparently took no action to enforce that obligation or obtain and disclose financial information from AMIS.[16]

* Up until the Plan Documents the sale to AMIS was described as if it had not already occurred. Later, despite Baker's claim that the sale "could be set aside at any time," Trustee claims that he could not set aside the sale and recover anything from AMIS' Chapter 7 estate. When we asked Baker at oral argument whether there was any evidence that AMIS had agreed to reverse the transfer if the bankruptcy court did not approve it, Baker admitted that there was no such evidence apart from his own representations.

* Baker offered an inconsistent and incomplete explanation to the bankruptcy court about writing off the Balance Due. *See* footnote 11 above and accompanying text.[17]

---

15. We note that the Disclosure Statement's liquidation analysis says nothing about the fact that, according to the Baker Report, the debt to Debtor's principal secured creditor is cross collateralized by a lien on the home of Debtor's founder Cabrera.

16. It appears that AMIS never made any payments on its promissory note. *See* footnote 7 above. We also note that the Baker Report states, "some pre-petition receivables have been used to pay March expenses" after the sale to AMIS, but it appears that Baker took no action in response.

17. Baker argues that even if he does hold a pre-petition claim against Debtor he is not necessarily disqualified from acting as Debtor's general bankruptcy counsel. He is wrong.

Baker cites two cases that actually hold to the contrary and one case that does not address the issue. *See In re Eastern Charter Tours, Inc.,* 167 B.R. 995 (Bankr.M.D.Ga. 1994) (rejecting such a rule and holding that Bankruptcy Code unambiguously disqualifies creditors from employment under § 327(a), but acknowledging contrary minority position); *In re Watervliet Paper Co., Inc.,* 111 B.R. 131 (W.D.Mich.1989) (no de minimis

\* As we explain in the next section of this discussion, the known facts establish that Baker apparently received a preference, even if he thinks he has an affirmative defense to avoidance of that preference. Baker said nothing about these issues in his Employment Application, the SFA, the Disclosure Statement, the Rule 2016 Disclosure, or any other document until Trustee discovered the timing and nature of the Pre–Petition Transfers and raised the preference issue in connection with Baker's Fee Application.

These examples illustrate that the bankruptcy court cannot fully evaluate whether Baker is disinterested or has an interest adverse to the estate without all the relevant facts. Baker's own nondisclosure is not the only problem. The employment application was signed by Baker not by Debtor as required by Rule 2014(a). The practical consequence is that Debtor has not disclosed its own knowledge about Baker's connections to Debtor, creditors, other parties in interest, etc. *See* Fed. R. Bankr.P. 2014(a) (requiring applicant to state, "to the best of the applicant's knowledge," all such connections).

Until the true facts are known, it is premature to excuse Baker from any nondisclosure of those facts and award him compensation. *See generally Park–Helena,* 63 F.3d at 880–81; *Mehdipour,* 202 B.R. at 478–80. Therefore, we must reverse the order granting the Fee Application.

2. *The bankruptcy court applied an incorrect legal standard by requiring an adversary proceeding without addressing the disinterestedness or adverse interest issues*

■ The bankruptcy court did not explicitly address the disinterestedness issues. Rather, it ruled in its Reconsideration Order that it could not determine preference issues in the context of a fee application, that such issues required an adversary proceeding, and that "[i]f [D]ebtor's counsel has received preferential payments, such monies may be recovered after all claims and defenses have been fully aired." *See* Fed. R. Bankr.P. 7001(1).

As we will discuss in more detail in the next section, if an adversary proceeding is truly required then the bankruptcy court either should defer its consideration of the Fee Application until such an adversary proceeding can be resolved or else it should combine the two proceedings. *Osherow v. Ernst & Young LLP (In re Intelogic Trace, Inc.),* 200 F.3d 382, 389–90 (5th Cir.2000); *In re Pillowtex, Inc.,* 304 F.3d 246 (3d Cir.2002). Even without an

exception permitting creditor to be employed under § 327(a), despite "persuasive" minority view); *In re Areaco Inv. Co.,* 152 B.R. 597 (Bankr.E.D.Mo.1993) (attorneys' prior representation of closely held corporate debtor's shareholders was a connection to parties in interest that should have been disclosed, and nondisclosure plus duplication of work warranted 33% reduction in fees).

We have previously acknowledged that "[t]he courts do not agree on whether counsel with a prepetition claim against the debtor is absolutely barred from representing the trustee or debtor in possession as general counsel," but we have come down firmly on the side of the courts barring such representation. *CIC I,* 175 B.R. at 55–56. *See also In re Siliconix,* 135 B.R. 378 (N.D.Cal.1991) (adopting per se rule that creditors are barred from employment by estate, rejecting minority view). *Compare In re Martin,* 817 F.2d 175 (1st Cir.1987) (no absolute rule against debtor's counsel requiring retainer to be secured, rejecting strict reading of term "creditor").

If Baker was a creditor of the estate on the Petition Date then he was ineligible for employment. The facts are unclear on this issue, so we make no determination whether Baker is barred from employment (and compensation) on this basis.

adversary proceeding, however, the bankruptcy court should have considered Baker's non-disclosure of what appears to be a preference, as well as any other nondisclosure or conflict of interest issues. For purposes of this part of our discussion, the issue is not whether Baker ultimately would have prevailed in any preference avoidance action. The issue is whether his nondisclosures and his possible conflicts of interest are enough by themselves to render him ineligible for employment or warrant disallowance or reduction of his fees.

There was a sufficiently realistic possibility that Baker had received a preference that he should have disclosed and addressed that issue. In fact, Baker essentially admits all the elements of a preference, although he alleges that he has an affirmative defense. Baker concedes that out of the Pre–Petition Payments $1,000.00 was received within the applicable preference period. He appears to admit (even insist) that this $1,000.00 was in payment of an antecedent debt rather than a retainer, and he does not contest the other elements of a prima facie preference. *See* 11 U.S.C. § 547(b)(1)-(5).[18] Yet Baker never disclosed this prima facie preference, and only in response to Trustee's Objection Supplement did he explain why he believes he would have had an affirmative defense to avoidance of that preference.

Baker should have disclosed the facts immediately after the Petition Date but the Employment Application, the Baker Report, the SFA, the Rule 2016 Disclosure, the Plan Documents, and the Fee Application are all silent on the issue. Whatever the merits of Baker's alleged

affirmative defenses (about which we express no view) his lack of disclosure should have been taken into account by the bankruptcy court without requiring Trustee to initiate an adversary proceeding.

In a comparable case nondisclosure of potential preferential or fraudulent transfers to a law firm was held to be a sufficient basis to deny all of the firm's requested fees, even though the trustees' suspicions of preferences or fraudulent transfers had not been proven and even though the firm allegedly believed that the transfers ultimately benefitted the estates. *In re Republic Fin. Corp.*, 128 B.R. 793 (Bankr.N.D.Okla.1991).

We do not mean to imply that Baker's nondisclosures and potential conflicts of interest are necessarily fatal to his employment or compensation. The bankruptcy court might determine, for example, that his nondisclosure of the preference issue was an oversight and should be excused, or that it warrants only a reduction and not elimination of any compensation. Our point is simply that in the circumstances of this case the burden is not initially on Trustee to prove an avoidable preference or commence an adversary proceeding to show that Baker is not disinterested or holds or represents and adverse interest. The initial burden is on Baker to establish that he was eligible for employment and should receive compensation notwithstanding his possible conflicts of interest and his nondisclosures, including that he received what appears on its face to have been a preference. If Baker meets that initial burden then, for reasons we

---

18. Section 547(b) provides for avoidance of any transfer of an interest of the debtor in property (1) to or for the benefit of a creditor, (2) for or on account of an antecedent debt owed by the debtor before such transfer was made, (3) made while the debtor was insolvent (presumed on and during the 90 days preceding the Petition Date), (4) made on or within 90 days of the Petition Date (or one year for insider creditors), and (5) that enables such creditor to receive more than it would receive if the transfer had not been made and such creditor received payment of such debt as provided in Chapter 7. 11 U.S.C. § 547(b) and (f).

discuss below, the bankruptcy court will still have to give Trustee the opportunity to resolve the preference issues before Baker may be paid any compensation.

3. *The preference issues must be resolved before Baker may be paid any compensation*

Trustee does not just object to Baker's nondisclosure. Trustee also argues that Baker actually received an avoidable preference. This has two implications.

■■■ First, if Baker actually did receive an avoidable preference then he would be ineligible to be paid anything from the estate unless and until he returns that preference. *See* 11 U.S.C. § 502(d); *MicroAge, Inc. v. Viewsonic Corp. (In re MicroAge, Inc.)*, 291 B.R. 503 (9th Cir. BAP 2002) (§ 502(d) applies to administrative claims). Trustee acknowledges that any preference action may be time barred but as Trustee points out even a time barred action can be asserted under Section 502(d). We have adopted this interpretation of Section 502(d) in keeping with the general rule that offsetting counterclaims and other matters of defense may be raised even when time barred and because we can discern "no purpose for section 502(d) if it applied only when the transfer therein contemplated could form the basis of an independent avoidance action seeking affirmative relief from the transferee." *Comm. of Unsecured Cred. v. Commodity Credit Corp. (In re KF Dairies, Inc.)*, 143 B.R. 734, 736–37 (9th Cir. BAP 1992).

Second, if Baker actually did receive an avoidable preference then he would probably be ineligible for employment, no matter how completely he disclosed the relevant facts, at least until he returns the preference. (*See* footnote 14 above.) As one court has put it, he would be unlikely to sue himself. *Pillowtex*, 304 F.3d at 254. This is critical because, as we have dis-

cussed above, until the bankruptcy court can determine whether Baker was properly employed it is premature to award him fees. *See Park–Helena*, 63 F.3d at 880–81; *Mehdipour*, 202 B.R. at 478–80; *CIC I*, 175 B.R. at 55–56; *and* footnote 12, supra.

■■■ Baker suggests on this appeal that Trustee waived the preference issues by proceeding to a hearing on the Fee Application without filing an adversary proceeding. Baker cites no authority for such a waiver, he did not make this argument before the bankruptcy court, Trustee filed his Opposition Supplement as soon as he discovered the relevant facts, and Trustee could not have acted sooner because of Baker's nondisclosure. We see no basis for any waiver.

To the contrary, one reason why it is proper to address this issue now, before any approval of Baker's Fee Application, is that otherwise Trustee might be held to have waived such an objection. *See Osherow*, 200 F.3d at 386–91 (debtor's failure to object to accountants' fees in § 330 hearing barred subsequent malpractice adversary proceeding); *MicroAge*, 291 B.R. at 512 ("section 502(d) should have been raised as an affirmative defense before the bankruptcy court entered an order allowing [the administrative claimant's] claim").

The bankruptcy court was concerned that an adversary proceeding would be required to resolve preference issues— presumably an action for declaratory relief because a preference action itself is apparently time barred. *See* Fed. R. Bankr.P. 7001(1) and (9). If so, then the bankruptcy court should stay the proceedings on Baker's Fee Application pending resolution of the preference issues or else it should combine the two proceedings. *See Osherow*, 200 F.3d at 389–90 (noting that fee hearing could have been stayed pending resolution of malpractice claims, or issues could have been litigated together).

*See also* Fed. R. Bankr.P. 3007 ("If an objection to claim is joined with a demand for relief of the kind specified in Rule 7001, it becomes an adversary proceeding."); Fed. R. Bankr.P. 9014(c) (bankruptcy court can direct that one or more rules applicable to adversary proceedings apply to contested matters).

 In any event, until the preference issues are resolved Baker cannot be paid any compensation. We agree with the court in *Pillowtex*, 304 F.3d at 255, that where there is a "facially plausible" preference claim then the preference issues must be resolved before proposed counsel can be employed (or compensated). Otherwise creditors bear the risk that they will be prejudiced by counsel who turns out not to have been disinterested or to have held or represented an averse interest.

The facts in *Pillowtex* are illustrative. The law firm in that case, Jones, Day, Reavis and Pogue ("Jones Day"), received payments from debtors during the ninety days before they filed bankruptcy petitions, including both a retainer for future bankruptcy services and payments on account of past services. Jones Day explained that it sought payment of outstanding bills "in order that it would not be a creditor at the time of the bankruptcy, as that would have disqualified it from retention as counsel," *id.* at 253, and it argued that the payments

"were substantially within the historical pattern of payments between Jones Day and the Debtors, which included wide swings in the timing of payments." [ ] Jones Day opposed the [UST's] requested hearing [to determine preference issues], arguing that it was "not necessary or appropriate for the Debtors' estates

to incur the time and expense of litigating the preference issue." *Pillowtex*, 304 F.3d at 249.

 The order on appeal in *Pillowtex* authorized employment of the firm without determining the preference issues. *Id.* at 249. The Third Circuit reversed and remanded, rejecting Jones Day's arguments that any conflict was not material and that the firm had a preference defense because "the $997,569.36 it received within the 90–day period was in the ordinary course of business." *Id.* at 254. The Third Circuit stated:

> Although a bankruptcy court enjoys considerable discretion in evaluating whether professionals suffer from conflicts, that discretion is not limitless. A bankruptcy court does not enjoy the discretion to bypass the requirements of the Bankruptcy Code.
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> Because there has never been a judicial determination whether Jones Day received a preference, it is unclear at this time whether the preference, if there were one, presents a conflict which would require Jones Day's disqualification. We hold that when there has been a *facially plausible claim of a substantial preference*, the district court and/or the bankruptcy court cannot avoid the clear mandate of the statute by the mere expedient of approving retention conditional on a later determination of the preference issue.

*Pillowtex*, 304 F.3d at 254–55 (emphasis added).[19]

Trustee in this case made a "facially plausible" claim of a preference. The $1,000.00 transfer primarily at issue is not

---

**19.** The only disagreement we have with *Pillowtex* on this point is that it also required the alleged preference amount to be "substantial." We think that a professional can be

ineligible for employment even if the alleged preference was not in a substantial dollar amount. *See* 11 U.S.C. §§ 101(14) and 327(a) *and* footnote 17, above.

a large dollar amount, but there is no minimum amount in Section 502(d) and under Sections 327(a) and 101(14) the $1,000.00 amount appears to be relevant to whether Baker was and is eligible for employment. Therefore, the bankruptcy court should have resolved the preference issues before awarding Baker's fees.

As in *Pillowtex*, other events have transpired and the work has already been done. *See id.* at 249 (noting that the "bankruptcy proceeding continued while this appeal proceeded" and plan of reorganization was confirmed). Nevertheless, the bankruptcy court has no discretion to disregard the Bankruptcy Code's requirements that Baker be eligible for employment (11 U.S.C. § 327(a) and 101(14)) and that Baker turn over any avoidable preference before he can be paid any administrative claim for fees. 11 U.S.C. § 502(d).

We recognize that the estate might gain only a Pyrrhic victory because in correspondence attached to Trustee's Objection Supplement Baker previously offered to return the $1,000.00, and perhaps the bankruptcy court will find that doing so cures any problem with Baker's employment and makes him eligible for fees. Trustee has undoubtedly spent more than the $1,000.00 on this appeal. Baker also might be able to moot the Section 502(d) issues by agreeing to a holdback of $1,000.00 from his Fee Application until the preference issues are resolved.

■ Still, these are only possible scenarios and it is also possible that Baker will turn out to be ineligible for employment or that his Fee Application will be denied in whole or in part, permitting the estate to retain up to $12,993.75 in fees that it otherwise would have had to pay.[20] Moreover, even if the estate in this case

ultimately gains no financial benefit, it is critical that we enforce the ethical requirements of the Bankruptcy Code and Rules. *See Republic Fin. Corp.*, 128 B.R. at 802–06; *Henderson v. Kisseberth (In re Kisseberth)*, 273 F.3d 714, 721 (6th Cir.2001) (citing "the need to compel future compliance" by sanctioned counsel "and on the part of all counsel appearing in bankruptcy court").

For these reasons the bankruptcy court must resolve the preference issues, even if that requires an adversary proceeding, before Baker can be paid any compensation.

## VI. CONCLUSION

The absence of a Rule 2014 Statement and Baker's other nondisclosures prevented the bankruptcy court from determining the true facts.

The bankruptcy court applied an incorrect legal standard when it apparently declined to address the disinterestedness or conflict issues unless Trustee could prevail in a preference avoidance action. The burden is on Baker to establish that despite his nondisclosure of the prima facie preference and other matters, and despite his possible conflicts of interest, he should be awarded some or all of his requested fees and expenses.

Trustee has also made a facially plausible claim that Baker did in fact receive a preference. Under Section 502(d), Baker's administrative claim for fees cannot be paid until he returns any avoidable preference; and under Sections 101(14) and 327(a) any preference may make Baker ineligible for employment, and hence for compensation. Therefore, the bankruptcy court erred by not addressing the prefer-

---

**20.** We express no opinion whether different rules might apply to reimbursement of Baker's expenses than for payment of Baker's fees. *But see Republic Fin. Corp.*, 128 B.R. at 806 (awarding expenses even though all fees were denied).

ence issues before awarding Baker any compensation.

For the foregoing reasons, the bankruptcy court's order granting Baker's Fee Application is REVERSED and the case is REMANDED for further proceedings consistent with this opinion.