**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**September 11, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

In re:

JORGE H. SANDOVAL,

       Debtor.

No. 07-5165

---

AFFORDABLE BAIL BONDS, INC.;
ROBERTA A. DAMPF-AGUILAR,

       Plaintiffs-Appellants,

v.

JORGE H. SANDOVAL, a/k/a
Jorge Homero Sandival,

       Defendant-Appellee.

---

SANDRA RAY THOMPSON;
MICHAEL REX THOMPSON,

       Amicus Curiae.

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**
**(D.C. No. 06-01264-R)**

---

Submitted on the briefs:[*]

Bruce A. McKenna and Brandon J. Burris, of Glendening, McKenna & Prescott, Tulsa, Oklahoma, for Plaintiffs-Appellants.

Mac D. Finlayson, of Morrel Saffa Craige, P.C., Tulsa, Oklahoma, for Amicus Curiae.

---

Before **HARTZ**, **EBEL**, and **O'BRIEN**, Circuit Judges.

---

**EBEL**, Circuit Judge.

---

Section 523(a)(7) of Chapter 11 of the Bankruptcy Code provides, in pertinent part:

> (a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt —
>
> . . . .
>
> (7) to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss. . . .

11 U.S.C. § 523(a)(7). This case presents a question of first impression in this circuit: does 11 U.S.C. § 523(a)(7) render nondischargeable a debt incurred by a debtor who has guaranteed a bail bondsman to make the bondsman whole in the event a criminal defendant jumps bail? We agree with the bankruptcy court that it

---

[*]    After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

does not, and we affirm.

Plaintiff Roberta A. Dampf-Aguilar, a professional bail bondsman licensed by the State of Oklahoma, is president of plaintiff Affordable Bail Bonds, Inc. (collectively "the Bondsman"). The Bondsman posted two bonds with the District Court of Tulsa County as surety for the promise of defendant, Bonito Yanez, to appear in court as ordered or forfeit the bonds. The bonds' face value totaled $16,000 and were executed by Yanez as principal and by the Bondsman, through an attorney-in-fact, as surety. The day before the bonds were posted, debtor Jorge H. Sandoval signed a "plain-talk" contract and a bond agreement agreeing to indemnify the Bondsman for the full amount of the bond posted in the event Yanez failed to appear for trial.[1] When Yanez failed to appear, the bonds were forfeited, Yanez and the Bondsman became responsible for payment of the bonds to the State of Oklahoma, and an order and judgment of forfeiture was entered against plaintiff Dampf-Aguilar and her attorney-in-fact. Aplt. App. at 27. Pursuant to the forfeiture judgment, the Bondsman paid $16,000 to the State of Oklahoma on behalf of Yanez.

The Bondsman then brought a breach of contract action against Sandoval in state court where she obtained a default judgment in the amount of $20,150.

---

[1] Sandoval also executed an indemnitor/guarantor checklist. All of the documents Sandoval signed were in Spanish, but it is undisputed that unexecuted English versions of the documents also appearing in the record are accurate translations.

Sometime after the entry of the default judgment against him, Sandoval filed for Chapter 7 protection, and the Bondsman brought this adversary proceeding seeking a determination that the debt owed her by Sandoval was nondischargeable under 11 U.S.C. § 523(a)(7).

The bankruptcy court held that the debt was dischargeable because § 523(a)(7) did not apply. It therefore dismissed the Bondsman's complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6), made applicable to the proceeding by Bankruptcy Rule 7012. The Bondsman elected to appeal to the district court which granted her motion for certification to appeal directly to this court under 28 U.S.C. § 158(d)(2)(A). We subsequently granted the Bondsman's petition for permission to appeal. *See* 28 U.S.C. § 158(d)(2)(A).[2]

The appearance bonds filed in the Tulsa County district court are signed by defendant Yanez, the attorney-in-fact for the Bondsman, and a deputy court clerk.

---

[2] In the case at bar, the bankruptcy court faced a situation indistinguishable for all relevant purposes from another case pending before it. *See Affordable Bail Bonds, Inc. v. Thompson (In re Thompson)*, Bankr. No. 05-15680-R, Adv. No. 07-1016-R, 2007 WL 2738171 (Bankr. N.D. Okla. Sept. 12, 2007). In deciding the Sandoval case, the bankruptcy court adopted "the analysis, reasoning and authorities set forth in the Summary Judgment Order entered in the Thompson Case in concluding that the Bondsman cannot prevail on a Section 523(a)(7) claim under the facts alleged in the Complaint in this case." Aplt. App. at 64. Because the *Thompson* bankruptcy was filed before the effective date of § 158(d)(2)(A), we assume, without deciding, that it was not eligible to be appealed directly to this court. Sandoval's case, however, was eligible for direct appeal to this court, although Sandoval has not appeared in this appeal. We have granted the Thompsons' motion for leave to become amicus and have considered the arguments and materials presented in their amicus-curiae brief.

4

They obligate Yanez and the Bondsman, to pay the State of Oklahoma $15,000 and $1,000 respectively upon the nonappearance of Yanez in court at the time stated on the bonds. Neither bond is signed by or refers to Sandoval.

The order and judgment of forfeiture lists only the Bondsman and her attorney-in-fact as "bondsman" and finds "that the conditions of said appearance bond[s] have been broken by both the defendant and the bondsman." Aplt. App. at 27, 33. Neither the judgment of forfeiture nor the receipt for payment of the forfeiture refer in any way to Sandoval. *Id.*

As mentioned above, Sandoval did sign three documents in relation to this matter. The "plain talk" contract, printed on the Bondsman's letterhead, was signed by defendant Yanez, and by Sandoval as the indemnitor.[3] In it, Sandoval promised to pay the full amount of the bond, including any unpaid bond premium, in the event of forfeiture. *Id.* at 35, 36. In the Bond Agreement, signed only by Sandoval, he promised to pay the Bondsman $1600 for the bond and to reimburse the Bondsman for actual expenses in case of forfeiture. *Id.* at 38-39. The Indemnitor/Guarantor Checklist, again signed only by Sandoval, memorialized Sandoval's understanding that he was "responsible for paying the full amount of the bond posted if the defendant does not appear in court for every appearance and any other time ordered by the court," and further that "if the bond is ordered

---

[3] The copy of the contract included in the record has a signature line for "agent," but that line is unsigned. Aplt. App. at 35.

forfeited . . . [he] must pay the full amount of the bail forfeited to the bail agency." *Id.* at 42.

"In reviewing a bankruptcy court decision under 28 U.S.C. § 158(a) and (d), the district court and the court of appeals apply the same standards of review that govern appellate review in other cases. Because this case requires us to determine the meaning of 11 U.S.C. § 523(a)(7), we review the [bankruptcy] court's decision de novo." *Troff v. Utah (In re Troff)*, 488 F.3d 1237, 1239 (10th Cir. 2007) (quotations and citation omitted).

It is important at the outset to understand what this case is not. It is not a case where the debtor was the defendant in the underlying criminal action who had previously jumped bail and is now attempting to get his debt to a governmental unit discharged in bankruptcy. Nor is it a case involving a bail-bondsman debtor or other type of surety debtor who is attempting to discharge a debt owing directly to a governmental unit incurred as a result of the nonappearance of a defendant. We are not concerned here with the nature, scope, or operation of the bond agreement between the Bondsman and the State of Oklahoma. With those caveats in mind, we turn to the statutory exception to discharge provided by 11 U.S.C. § 523(a)(7). As noted above, the statute provides, in pertinent part:

> (a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt —

. . . .

> (7) to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss. . . .

11 U.S.C. § 523(a)(7). In order to determine whether Sandoval's debt is immune from discharge, we must decide whether it meets all three requirements specified in § 523(a)(7). *City of Philadelphia v. Gi Nam (In re Nam)*, 273 F.3d 281, 285 (3rd Cir. 2001).

The bankruptcy court held that "Sandoval was not a party to the Bonds that were forfeited, and therefore his debt is not for a forfeiture of a bond, nor is his debt for a fine or penalty imposed upon him by the State." Aplt. App. at 64. On appeal, the Bondsman again argues that this debt is a forfeiture. It is unnecessary, however, for us to decide that question because this debt is not payable to and for the benefit of a governmental unit, and thus the statute does not bar discharge.

There is no obligation here flowing from Sandoval to the State of Oklahoma. Both the bond agreement between Sandoval and the Bondsman and the checklist provide that any money owed is payable to the Bondsman. Aplt. App. at 37, 42. In the Bondsman's opening brief, the corporate disclosure statement required by Fed. R. App. P. 26.1 indicates that the Bondsman is a nongovernmental corporate entity. Plaintiff Dampf-Aguilar's affidavit states that she is the sole shareholder and director of plaintiff Affordable Bail Bonds, Inc.

7

Aplt. App. at 30.  The Bondsman is not a governmental unit, and the fact that she ultimately paid money to the State of Oklahoma after Yanez failed to appear does not change her status from that of a private corporate entity.  *See Empire Bonding Agency v. Lopes (In re Lopes)*, 339 B.R. 82, 89 (Bankr. S.D.N.Y. 2006).

The Bondsman attempts to satisfy the government-entity prong of § 523(a)(7) by arguing that she should be subrogated to the rights of the State of Oklahoma.  The bankruptcy court was correct, however, that the State had no rights on the bail bond or otherwise against Sandoval.  Thus, "stepping into the shoes" of the State as a subrogee avails the Bondsman nothing in regard to the dischargeability of the debt and fails to afford the Bondsman status as a governmental unit.  *See In re Lopes*, 339 B.R. at 90; *Correales v. Sanchez (In re Sanchez)*, 365 B.R. 414, 417 (Bankr. S.D.N.Y. 2007).

As must be clear, there is very little published law in this area.  There is one anomalous and unpublished case, however, from the bankruptcy court for the Southern District of New York that runs counter to the bankruptcy court here and to *In re Lopes* and *In re Sanchez.*  The Bondsman urges this court to follow *Amwest Surety Ins. Co. v. Contreras (In re Contreras)*, 2006 Bankr. LEXIS 4402 (Bankr. S.D.N.Y. 2006).  *Contreras*, however, decided after the published authority of the same court in *Lopes*, failed to cite or distinguish the *Lopes* precedent and is unpersuasive because it is devoid of meaningful analysis.

The Bondsman argues that *In re Lopes* was wrongly decided and that the

8

precedent of *In re Nam*, 273 F.3d 281, *Dobrek v. Phelan*, 419 F.3d 259 (3d Cir. 2005), and *United States v. Zamora*, 238 B.R. 842 (D. Ariz. 1999), compels reversal. Those cases are all inapposite, however, because in each of them the debtor was directly obligated to the governmental unit. It is the relationship (or non-relationship) of Sandoval to the State of Oklahoma here that brings this case outside the ambit of the Bondsman's cited authority.

The Bondsman argues that "[a]s a matter of public policy, it makes no sense to except from discharge the bondsman's obligation for the forfeiture but [] allow the guarantor/co-signer on the forfeited bond to obtain a discharge for the debt." Aplt. Br. at 20. This circuit has yet to determine whether, under the usual circumstances, a bondsman-debtor's obligation under a forfeited bond may be discharged, and this case does not present that issue. In any event, the application of the statute in this case is clear.

"[E]xceptions to discharge are to be narrowly construed, and because of the fresh start objectives of bankruptcy, doubt is to be resolved in the debtor's favor." *Bellco First Fed. Credit Union v. Kaspar (In re Kaspar)*, 125 F.3d 1358, 1361 (10th Cir. 1997). Treating this debt as nondischargeable under § 523(a)(7) would be inconsistent with the plain language of the section.

The judgment of the bankruptcy court is AFFIRMED.

9