**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 31, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

In re:

SOUTHWEST FOOD
DISTRIBUTORS, LLC, d/b/a The
Fadler Company,

        Debtor.

 

OFFICIAL COMMITTEE OF
UNSECURED CREDITORS,

        Appellant,

    v.

EUGENE HARRIS, Receiver for JFC
Management, Inc.; F&M BANK &
TRUST COMPANY,

        Appellees.

No. 08-5160

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**
**(D.C. NO. CV-08-00171-TCK-SAJ)**

---

Submitted on the briefs:

Harley J. Goldstein, Bell, Boyd & Lloyd, LLP, Chicago, Illinois, for Appellant.

Terry M. Thomas, Kayci Bair Hughes, Michael R. Pacewicz, Crowe & Dunlevy,
PC, Tulsa, Oklahoma; and J. Schaad Titus, Kelley G. Loud, Titus, Hillis,
Reynolds, Love, Dickman & McCalmon, Tulsa, Oklahoma, for Appellees.

Before **KELLY**, **ANDERSON**, and **BRISCOE**, Circuit Judges.

**ANDERSON**, Circuit Judge.

Appellant, the Official Committee of Unsecured Creditors ("Committee"), appeals the district court's affirmance of a bankruptcy court's order denying the appointment of certain counsel.[*] We affirm.

## BACKGROUND

On January 8, 2008, Southwest Food Distributors, LLC d/b/a The Fadler Company ("Debtor"), filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the Bankruptcy Court in the Northern District of Oklahoma. On the same day, the Debtor filed its "List of Creditors Holding 20 Largest Unsecured Claims," which included unsecured creditors in Texas, Illinois, Pennsylvania, Nebraska, Minnesota, and Georgia. On January 23, 2008, the Debtor filed its Summary of Schedules and Schedules A-H (collectively

---

[*]After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

"Summaries and Schedules"), which listed total assets of $1,157,651 and total liabilities of $12,240,882.

On January 31, 2008, the Office of the United States Trustee ("UST") appointed the Committee as an official committee to represent the interests of the unsecured creditors of the Debtor, pursuant to 11 U.S.C. § 1102, and filed a formal notice the next day reflecting this appointment. At the time of the Committee's appointment, the Committee was composed of five entities, each represented by an individual located outside the Northern District of Oklahoma.[1] Also on January 31, 2008, the Committee selected Bell, Boyd & Lloyd LLP ("Bell Boyd") of Chicago, Illinois, as its lead counsel. Bell Boyd, in turn, selected Gable & Gotwals of Tulsa, Oklahoma, as its local counsel.

The Committee filed an "Application for Order Authorizing Official Committee of Unsecured Creditors to Retain and Employ Bell, Boyd & Lloyd LLP as Counsel" and an "Application for Order Authorizing Official Committee of Unsecured Creditors to Retain and Employ Gable [&] Gotwals as Local Counsel" in February 2008. The application to employ Bell Boyd included (1) a summary of Bell Boyd's qualifications to represent the Committee; (2) the professional services to be provided to the Committee; (3) the names and hourly rates of the professionals expected to be providing services to the Committee; (4)

---

[1]The representatives were located in New York, Texas, Idaho, Illinois, and California.

an explanation of the formula used to calculate Bell Boyd's legal fees; (5) a request that the application be approved retroactive to the date of the appointment of the Committee; and (6) a statement that Bell Boyd has no connection with the Debtor, its creditors, or other parties in interest except as set forth in counsel's declaration. See Doc. 68, Appellant's App. at 165-69. The application represented that the rates for the Bell Boyd attorneys expected to perform work on the case ranged from $250 to $505 per hour, and that rates for legal assistants ranged from $180 to $225 per hour. The application also stated that the listed rates for Bell Boyd personnel would be subject to "periodic adjustments." The declaration to which the application referred affirmed the accuracy of the statements in the application, described the conflict check process utilized by Bell Boyd, and included a disclosure of Bell Boyd's current and previous representation of certain affiliates, subsidiaries, joint ventures, and/or entities associated with creditors of the Debtor in matters unrelated to the Debtor's bankruptcy. The next day, the Committee filed an application seeking the appointment of Gable & Gotwals as local counsel. That application made substantially the same representations, with the exception of fees, as the application for Bell Boyd's retention.

Appellee F&M Bank & Trust Company ("F&M"), a secured creditor of the Debtor, filed an objection to both applications. Among other things, F&M objected to the Committee's proposed retention of "'national' counsel at rates

twice the rates of highly competent local, state or regional counsel." F&M's Objection to Application to Retain Bell Boyd at 1, Appellant's App. at 189. F&M went on to argue that "Gable Gotwals is a regional firm that could more than adequately represent the Committee. Bell Boyd's rates are not competitive with the rates of Gable Gotwals or other local firms in this market," and that "retaining Bell Boyd will require the bankruptcy estate to incur significant expenses for travel time that could be avoided if a regional firm were retained." Id. at 190-91. In its objection to the retention of Gable & Gotwals, F&M stated that " Gable Gotwals is a regional firm that can more than adequately represent the Committee in this case. F&M Bank therefore objects to the Application to Employ Gable Gotwals only in so far as Gable Gotwals would be local counsel supporting Bell Boyd as lead counsel." F&M's Objection to Application to Retain Gable Gotwals at 1-2, Appellant's App. at 197-98.

On February 19, 2008, the UST filed his comments on the applications for the retention of Bell Boyd and Gable & Gotwals. The UST explained:

> The UST has discussed with all parties his concern about administrative expenses in this case. The UST has also discussed the rates proposed to be charged by Bell Boyd as compared to the lower hourly rates charged by local professionals with similar levels of experience. The UST recognizes that, at this point, employment is all that is sought by the professionals. However, the UST does not want to surprise any professional with an objection to hourly rates and travel expenses after significant time and out of pocket expenses have been expended in furtherance of UCC representation.

Comments of the UST at ¶ 3, Appellant's App. at 202. The UST further observed:

> If Bell Boyd were to cap all fees at the applicable rates set out in the Local Fee Survey for 2008, and if both firms sought to be retained by the UCC undertake efforts to minimize duplication of services with clear task division and minimal inter-office conferences and administrative support functions, the expense to the estate would be reduced and if results at the end of the case warranted, the Court could consider an application for a bonus at that time.

Id. at 203.

Also on February 19, the Committee filed a supplemental declaration disclosing additional parties searched by Bell Boyd for conflicts and maintaining that Bell Boyd represented no adverse interests to any parties or entities involved in the bankruptcy case, within the meaning of 11 U.S.C. § 1103. On the same day, the Committee responded to each of F&M's objections to Bell Boyd's retention, and argued, in particular, that the Committee is entitled to retain the counsel of its choice, even if such counsel is from outside the region. On February 20, Eugene Harris, the Receiver for JFC Management, Inc., the holder of an unsecured claim, filed its "Notice of Support" for the positions taken by F&M with respect to the applications to retain Bell Boyd and Gable & Gotwals.

On February 21, the Bankruptcy Court held a hearing on the applications. The Committee argued that Bell Boyd had met the standard for retention of counsel set out in 11 U.S.C. § 1103, and that the concerns raised by those

-6-

objecting to Bell Boyd's retention were issues related to compensation approval, rather than retention.  The Court observed the following:

> One of the questions that I have in my mind–and I do recognize the fact that there should be some deference given to the Committee to employ counsel of its choice is whether or not we really need to have two firms.  Do we really need to have two firms regardless of what rates are finally approved and what fees are allowed when no matter how efficient the two firms are it does by–through no fault of anyone's it adds some additional inefficiencies or some duplication and it makes things more complicated for me in reviewing fee applications.  There has to be coordination if there's more than one firm involved.

Tr. on Hr'g on Application to Employ Counsel at 17-18, Appellant's App. at 243-44.  The court then determined to receive evidence during the hearing, and Neil Tomlins, the Senior Vice-President and General Counsel of F&M, testified as to its interest as an unsecured creditor of the Debtor.[2]

After the presentation of evidence, F&M argued that there was "no evidence that a local firm cannot adequately inform and advise the Committee with regard to any other matter that might arise in this case. . . .  [T]he Committee must acknowledge that Gable & Gotwals or another local firm can do the job adequately and more economically."  Id. at 257-58.  F&M further argued that

---

[2]Tomlins testified that "at the end of the day the bank will be an unsecured creditor in this case of anywhere from five to seven million dollars."  Tr. of Hr'g on Application to Employ Counsel at 25, Appellant's App. at 251.  There was also testimony that F&M had received 3.8 million dollars from the Debtor in the ninety days prior to the bankruptcy filing.  Counsel for the Debtor testified that it "would recognize that the bank [F&M] does have a strong economic interest or sizeable economic interest in the case."  Id. at 256.

"[t]here are always national creditors in cases in Tulsa, Oklahoma, as the Court and all the counsel up here well know. National creditors and businesses routinely entrust their matters to local firms." Id. Finally, F&M observed that it "will undoubtedly be the largest unsecured creditor in this case. It's money and the money of all unsecureds is at issue here. We request that the application of Bell Boyd be denied." Id.

The UST then argued that his "issue is primarily that of economics. Given the status of the case, given the scope of the . . . case, the U.S. Trustee is very concerned about the costs of the administration of this case." Id. at 259.

Bell Boyd argued that "this is not a case with a handful of national creditors. This is a case predominantly with national creditors. While the bank is local, the real sizeable claims of the unsecured creditors are not located in Tulsa. [B]ased on the legal standard here under Section 1103 of the Bankruptcy Code, which is simply the adverse interest standard, my firm is entitled to be retained." Id. at 260. When asked by the court to explain the necessity for two firms, Bell Boyd responded that it had "come to an agreement where we'll very specifically delineate tasks so there's absolutely no redundancy. If there is redundancy, then we won't bill for that . . . While we would think that we can handle the case in a theoretical perspective, it will actually be much more efficient if we use local counsel." Id. at 264. The court then asked Bell Boyd if it would acknowledge that the prevailing local rates are the "appropriate rates for the Court to consider

-8-

when reviewing fee applications." Id. at 271. Bell Boyd's counsel responded that, while he did not "have the power to consent to do that as such, . . . if that's the way Your Honor rules then we will certainly abide by that and stay in the case." Id.

The court then took a recess, following which it ruled on the applications to retain counsel, stating as follows:

> The Court concludes that at this juncture there is no evidence that this Chapter 11 case is complex or difficult or national in scope and no compelling evidence was presented that counsel in this locale lacks the necessary expertise that this case requires or is not available to capably represent the Official Committee of Unsecured Creditors.
>      No evidence was presented by the Official Committee that it is necessary to employ more than one law firm to represent the Committee in this case. No members of the Official Committee appeared to explain why it is necessary or appropriate to employ Bell Boyd or what criteria was used to select Bell Boyd as proposed counsel for the Committee. Two of the largest unsecured creditors strongly object to the application and the United States Trustee in this district has expressed serious concerns about the retention of the Bell Boyd firm.
>      There was no evidence that the debtor is not capable or willing to fulfill the duties of a debtor in possession and this court has [confidence] in the experience and integrity of debtor's counsel. The Court desires to afford the debtor every opportunity to reorganize and to afford the creditors the best opportunity to recover on their respective claims and, therefore, recognizes the need to contain administrative costs and expenses.
>      Accordingly, the Court concludes that at this juncture in this case it is not necessary or appropriate to approve more than one law firm to represent the Committee, nor is it necessary for the estate to absorb unnecessary costs and expenses related to employment of counsel from outside this region.
>                                                     . . . .

No one has objected to retention of the Gable Gotwals firm. The Court has confidence that the firm has the necessary expertise and many years of experience in Chapter 11 matters to well represent the Official Committee. Accordingly, the Committee's retention of the Gable Gotwals firm is approved.

Id. at 274-75. The Bankruptcy Court issued its written order on February 22, 2008, reiterating its oral findings denying Bell Boyd's appointment as counsel for the Committee and approving the retention of Gable & Gotwals.

The Committee appealed the decision to the United States District Court for the Northern District of Oklahoma. The district court referred the matter to a magistrate judge who, on August 12, 2008, issued a report and recommendation recommending that the district court affirm the order of the Bankruptcy Court. The Committee filed an objection to the report and recommendation, to which F&M filed a response. On October 16, 2008, the district court issued an order adopting the magistrate judge's report and recommendation and affirming the Bankruptcy Judge's order rejecting the retention of Bell Boyd's and accepting the retention of Gable & Gotwals as counsel for the Committee. This appeal followed.

**DISCUSSION**

"'In reviewing a bankruptcy court decision under 28 U.S.C. § 158(a) and (d), the district court and the court of appeals apply the same standards of review that govern appellate review in other cases.'" Affordable Bail Bonds, Inc. v.

Sandoval (In re Sandoval), 541 F.3d 997, 1000 (10th Cir. 2008) (quoting Troff v. Utah (In re Troff), 488 F.3d 1237, 1239 (10th Cir. 2007)).  "Denial of an application for professional employment is reviewed under an abuse of discretion standard."  Winship v. Cook (In re Cook), 223 B.R. 782, 788 (10th Cir. BAP 1998); see also Interwest Bus. Equip., Inc. v. United States Trustee (In re Interwest Bus. Equip., Inc.), 23 F.3d 311, 315 (10th Cir. 1994)).  "A [] court abuses its discretion where it commits a legal error or relies on clearly erroneous factual findings, or where there is no rational basis in the evidence for its ruling."  Gillman v. Ford (In re Ford), 492 F.3d 1148, 1153 (10th Cir. 2007) (further quotation omitted).[3]

When a committee has selected counsel to represent it in bankruptcy proceedings, counsel must comply with the provisions of 11 U.S.C. § 1103 and Fed. R. Bankr. P. 2014.  Section 1103(b) provides that an attorney "may not, while employed by such committee, represent any other entity having an adverse interest in connection with the case."  11 U.S.C. § 1103(b).  Additionally, in order

_____

[3]The Committee attempts to characterize the issue before us on appeal as strictly a legal one–"[w]hether the Bankruptcy Court erred as a matter of law when it denied the retention of counsel chosen by the Committee based upon such counsel being from outside the region of the judicial district in which the case is pending, on the ground that competent counsel in the region is available." Appellant's Op. Br. at 3.  As indicated in text, our standard of review is clearly an abuse of discretion standard, although that standard incorporates an inquiry into whether the Bankruptcy Court committed an error of law, an issue which we traditionally review *de novo*.

-11-

to obtain court approval for its appointment, counsel must satisfy the conditions
of Rule 2014, which provides:

> An order approving the employment of attorneys . . . pursuant to . . .
> § 1103 . . . of the Code shall be made only on application of the
> trustee or committee . . . [,] [stating] the specific facts showing the
> necessity for the employment, the name of the person to be
> employed, the reasons for the selection, the professional services to
> be rendered, any proposed arrangement for compensation, and, to the
> best of the applicant's knowledge, all of the person's connections
> with the debtor, creditors, any other party in interest, their respective
> attorneys and accountants, the United States Trustee or any person
> employed in the office of the United States Trustee.

Fed. R. Bankr. P. 2014(a).  The Committee argues that, once proposed counsel
has met the requirements of § 1103 and Rule 2014, then no further inquiry is
necessary and the bankruptcy court must appoint such counsel.  Their
interpretation of the statute and rule is too narrow, and we therefore disagree.

"Although the Code vests in the bankruptcy trustee the immediate power to
select candidates for employment by the bankruptcy estate, it gives broad
discretion to the bankruptcy court over the appointment of professionals to work
on behalf of the trustee and the estate, in part by empowering the court to approve
candidates so selected."  Harold & Williams Dev. Co. v. United States Trustee (In
re Harold & Williams Dev.), 977 F.2d 906, 909 (4th Cir. 1992).  If the bankruptcy
court lacked such discretion, it would simply be a rubber stamp for the selections
of counsel or other professionals by participants in bankruptcy proceedings.  As
the district court observed, "the Committee's interpretation of the rule and the

-12-

statute would limit a bankruptcy court's inquiry and would leave little room for the discretion afforded bankruptcy courts in reviewing applications for employment." Rep. & Rec. at 12, Appellant's Appl at 19. "The purpose of the rule requiring court approval of employment is to enable the court to control administrative expenses." In re Sound Radio, Inc., 145 B.R. 193, 202 (Bnkr. D.N.J. 1992). Further, "[a]bsent extraordinary circumstances, bankruptcy estates should not be consumed by the fees and expenses of court-appointed professionals." In re Kusler, 224 B.R. 180, 184 (Bankr. N.D. Okla. 1998 (quoting In re Toney, 171 B.R. 414, 415 (Bankr. S.D. Fla. 1994) (citing In re Auto Parts Club, Inc., 211 B.R. 29 (9th Cir. BAP 1997))).

Furthermore, as the bankruptcy court's explanation of its reasoning above indicates, the court carefully examined the necessity for Bell Boyd's services in this case and concluded that, for a variety of reasons, the appointment of Bell Boyd, in addition to Gable & Gotwals, was unnecessary. The legislative history for § 1103 "indicates the need for close scrutiny of . . . [the] employment [of more than one attorney." In re The Bible Speaks, 67 B.R. 426 (Bankr. D. Mass. 1986). "The subsection provides for the employment of more than one attorney. However, this will be the exception and not the rule; cause must be shown to depart from the normal standard." H.R. Rep. No. 595, 95th Cong., 1st Sess. 402 (1977), *reprinted in* U.S. Code Cong. & Admin. News 1978, pp. 5787, 6358;

-13-

accord, S. Rep. No. 989, 95th Cong. 1st Sess. 114 (1977), *reprinted in* U.S. Code

Cong. & Admin. News 1978, p. 5900.

The Committee argues that, to the extent the bankruptcy court's rejection of

Bell Boyd was motivated by the fact that Bell Boyd's fees were "national" and

therefore higher than necessary, such an argument is simply a fee issue, which

can be addressed later when fee applications are submitted. While there is some

merit to that argument, it does not absolve the bankruptcy court from the

necessity of considering the wisdom of appointing more expensive counsel at the

outset. As the bankruptcy court stated in In re The Bible Speaks, 67 B.R. 426

(Bankr. D. Mass. 1986), when it denied approval of the employment of two law

firms, "the inevitable reduction of requested compensation has aspects of

unfairness to counsel whose joint employment has been previously authorized.

Denial of that joint employment in the first instance avoids the entire problem."

Id. at 428. Thus, delaying to the fee application stage consideration of the

necessity of appointing more expensive counsel may simply postpone the

resolution of a question which may be dealt with more efficiently and fairly at the

retention stage. We agree with the district court, when it observed:

> [There is] nothing inappropriate in the Bankruptcy Court considering
> attorney fees at the state of the case where a creditors' committee
> seeks approval of retained counsel. It would be grossly inefficient
> for the Bankruptcy Court to ignore attorney fees at that stage and set
> itself up for a needless fight at the attorney fees stage over which
> fees were duplicative and higher than necessary. It would also seem
> unfair to national counsel to be retained at the early state of

-14-

proceedings only to be surprised when the Bankruptcy Court later reduced their fees to the local rate and removed all duplication.

Rep. & Rec. at 16-17, Appellant's App. at 23-24.

While the right to select counsel of one's own choice is an undeniable right afforded to participants in bankruptcy, that right is not without boundaries. We cannot say that the court abused its discretion in deciding that the case did not merit the appointment of two sets of counsel, and that Gable & Gotwals could adequately perform the job.[4]

**CONCLUSION**

For the foregoing reasons, we AFFIRM the decision of the district court.

---

[4]The Committee also argues that, even aside from the Court's refusal to confirm the employment of Bell Boyd, the Committee was "forced" to retain Gable & Gotwals once the Court decided that there was no need to retain two law firms. This argument mischaracterizes the Bankruptcy Court's analysis. The Court did not simply conclude that insufficient cause had been shown for the retention of two law firms; rather, it also concluded that local less expensive counsel was adequate for the job, and that the Committee's application to retain such counsel should accordingly be granted.