NOT FOR PUBLICATION

## UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No.   ID-11-1315-HJuMk |
| LESLIE FRED DANNER and TERRIANN RENE DANNER, | Bk. No.   11-00651-TLM |
| Debtors. | |
| LESLIE FRED DANNER; TERRIANN RENE DANNER, | |
| Appellants, | |
| v. | |
| UNITED STATES TRUSTEE, | |
| Appellee. | |
| In re: | BAP No.   ID-11-1525-HJuMk |
| KEVIN CLYDE WERRY and D'RESE GRETCHEN WERRY, | Bk. No.   11-01710-JDP |
| Debtors. | |
| KEVIN CLYDE WERRY; D'RESE GRETCHEN WERRY, | |
| Appellants, | |
| v. | **M E M O R A N D U M**[1] |
| UNITED STATES TRUSTEE, | |
| Appellee. | |

_____

[1] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

Argued and Submitted on June 14, 2012
at Boise, Idaho

Filed - July 31, 2012

Appeal from the United States Bankruptcy Court
for the District of Idaho

Honorable Terry L. Myers, Chief Bankruptcy Judge, Presiding[2]
Honorable Jim D. Pappas, Bankruptcy Judge, Presiding[3]

Appearances:    Randal Jay French, Esq. of Bauer & French argued
for the Appellants; David W. Newman, Esq. of the
Office of United States Trustee argued for the
Appellee.

Before: HOLLOWELL, JURY, and MARKELL, Bankruptcy Judges.

Randal J. French of the law firm, Bauer & French, (collectively referred to as French) appeals orders denying his applications for employment. In each bankruptcy case, French disclosed that he had received an "advance payment retainer" from the debtors. However, the bankruptcy courts found that the advance payment retainer was actually a security retainer, and therefore, was property of the estate, which required that French seek approval and authorization pursuant to § 330[4] before he could draw against it to pay his fees. Because the employment applications did not contemplate that the retainers would be reviewed under § 330, the bankruptcy courts denied them. We AFFIRM.

---

[2] BAP No. ID-11-1315.

[3] BAP No. ID-11-1525.

[4] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532. All "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

## I. FACTS

**A.   Danner Bankruptcy Case**

On March 16, 2011, Leslie and TerriAnn Danner (the Danners) filed a chapter 11 petition for relief and remained as debtors-in-possession.  The same day, French filed an employment application for approval pursuant to § 327 (Danner Employment Application).  In the Danner Employment Application, and in the accompanying disclosures and affidavits, French disclosed that he had received funds from the Danners prior to the bankruptcy filing.  The Danners paid French $8,539, which included a $7,500 "advance payment retainer" (Retainer) and $1,039 for the filing fee.  According to the fee agreement between French and the Danners, the Retainer was considered to be advance payment for French's services to be provided in the chapter 11 case.  French disclosed that he would charge an hourly fee for services and then credit the services performed both before and after the Danners' filing against the Retainer.  French also stated that he would "account for all services rendered and refund any unearned retainer or seek additional compensation if the fees for services rendered exceeds the amount of the advance payment retainer."

On March 31, 2011, the bankruptcy court issued a notice of hearing on the Employment Application.  Prior to the hearing, the United States Trustee (UST) filed an objection to the Employment Application contending that French was using the Retainer to ensure payment for postpetition services without seeking bankruptcy court approval, which improperly circumvented § 330.[5]

---

[5] Section 330 provides:
(a)(1) After notice to the parties in interest and the
United States Trustee and a hearing, and subject to sections
(continued...)

-3-

French filed a response to the UST's objection. French asserted that the Retainer, as an "advance payment retainer," belonged to French as of the date of payment and was not part of the bankruptcy estate. French stated he had deposited the Retainer in the firm's general business account; it was not segregated in a client trust account. French also asserted that because the Retainer was not the Danners' property or property of the Danners' estate, review under § 330 was not required.

A hearing on the Danner Employment Application took place on April 18, 2011. The bankruptcy court took the matter under advisement. On May 26, 2011, the bankruptcy court issued a memorandum decision and order denying the Danner Employment Application. The bankruptcy court found that despite French's characterization, the Retainer was not an advance payment retainer because it was not a flat fee for services to be performed. Instead, the bankruptcy court found that French intended to use the Retainer, in part, as compensation for future

[5](...continued)
326, 328, and 329, the court may award to a trustee, . . . or a professional person employed under section 327 . . .
    (A) reasonable compensation for actual, necessary services rendered by the . . . professional person, or attorney and by any paraprofessional person employed by any such person; and
    (B) reimbursement for actual, necessary expenses.

The court must consider and take into account all relevant factors, including time spent on services, rates charged, whether the services were necessary to the administration of the estate, performed in a reasonable time and manner, or duplicative. 11 U.S.C. § 330(a)(3), (4). Therefore, the court may award compensation that is less than the amount of compensation requested. 11 U.S.C. § 330(a)(2).

yet-to-be performed services. Thus, the bankruptcy court found that the Danners retained an ownership interest in the Retainer. As a result, the bankruptcy court found that the Retainer was a security retainer used to secure payment for future fees, which remained property of the estate, and which could only be drawn upon to the extent compensation is awarded and authorized pursuant to § 330. The bankruptcy court denied the Danner Employment Application because under the terms of French's proposed employment, French would draw against the Retainer in contravention of § 330. The Danners timely appealed.

**B.      Werry Bankruptcy Case**

Kevin Clyde and D'Rese Gretchen Werry (the Werrys) filed a chapter 11 bankruptcy petition on June 6, 2011, and continued as debtors-in-possession. Two days later, French filed an employment application pursuant to § 327 (Werry Employment Application). In the Werry Employment Application and accompanying disclosures and affidavits, French disclosed that he had received, prepetition, $7,500 as an "advance payment retainer" (Retainer). The Retainer and fee agreement in the Werrys' case were the same as those in the Danners' case. The Retainer was considered advance payment for pre- and postpetition services provided in the chapter 11 case. French disclosed that he would charge an hourly fee for services and then credit the services performed both before and after the Werrys' filing against the Retainer. Additionally, French stated that he would either refund any unearned portion of the Retainer or seek additional compensation if the fees for services performed exceeded the amount of the Retainer.

Also, in the Werry Employment Application and affidavit submitted with it, French disclosed that the Retainer was provided by Carol Duppong (Duppong). While the Werrys acknowledged that their friend, Duppong, had paid the Retainer, they agreed to pay for any fees over the Retainer amount.[6] French disclosed that $4,294.50 of the Retainer had already been used to pay for prepetition services. Finally, French disclosed that it had represented no interest adverse to the Werrys or the estate.

The UST objected to the Werry Employment Application. The UST objected because:

> Counsel appears to have paid himself for post-petition services that had not been performed as of the date of payment. He states that he will account to the Court for all services post-petition, but by implication that is merely an accounting and not an application for the Court to approve the fees paid pre-petition but earned post-petition.

French made three main arguments in its response to the UST's objection. First, French argued that the Retainer was not a basis for denial of the Werry Employment Application, but that the bankruptcy court could only deny employment if the attorney is not disinterested or holds an interest adverse to the estate. Second, French argued that because the Retainer was an advance payment retainer, the bankruptcy court could review its

//
//

---

[6] The Werrys' schedules list Duppong as an unsecured, nonpriority creditor holding a $8,539 claim stemming from a loan. Therefore, it appears that the Werrys borrowed the money from Duppong to pay French.

reasonableness under § 329.[7]  Third, French contended that advance payment retainers were not unethical or impermissible under the Bankruptcy Code or Idaho law.

A hearing on the Werry Employment Application was held on July 19, 2011.  The bankruptcy court took the matter under advisement and subsequently issued a memorandum decision finding that (1) French failed to adequately disclose his relationship to Duppong, a creditor of the bankruptcy estate, and was potentially not disinterested; and (2) the Retainer was not an advance payment retainer and therefore was property of the estate, which required authorization and approval for payment under § 330.  For these reasons, the bankruptcy court denied the Werry Employment Application.  It entered its order denying the Werry Employment Application on August 26, 2011.  The Werrys timely appealed.

---

[7] 11 U.S.C. § 329.

(a) Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation.

(b) If such compensation exceeds the reasonable value of any such services, the court may cancel any such agreement, or order the return of any such payment, to the extent excessive, to–
  (1) the estate, if the property transferred –
    (A) would have been property of the estate; or
    (B) was to be paid by or on behalf of the debtor under a plan under chapter 11, 12, or 13 of this title; or
  (2) the entity that made such payment.

-7-

## II.  JURISDICTION

The bankruptcy courts had jurisdiction pursuant to 28 U.S.C. § 157(b)(2)(A) and § 1334(b).  The Bankruptcy Appellate Panel granted the Danners' and Werrys' motions for leave to appeal the interlocutory orders; therefore, we have jurisdiction under 28 U.S.C. § 158.

## III.  ISSUE

Did the bankruptcy courts err in finding that the Retainers were property of the debtors' estates, and therefore, that they could only be drawn upon to the extent compensation is awarded and authorized under § 330?

## IV.  STANDARDS OF REVIEW

Employment orders are reviewed for abuse of discretion. COM-1 Info, Inc. v. Wolkowitz (In re Maximus Computers, Inc.), 278 B.R. 189, 194 (9th Cir. BAP 2002).  A bankruptcy court abuses its discretion if it bases a decision on an incorrect legal rule, or if its application of the law was illogical, implausible, or without support in inferences that may be drawn from the facts in the record.  United States v. Hinkson, 585 F.3d 1247, 1261-62 & n.21 (9th Cir. 2009) (en banc); Ellsworth v. Lifescape Med. Assocs., P.C. (In re Ellsworth), 455 B.R. 904, 914 (9th Cir. BAP 2011).  The bankruptcy court abuses its discretion if it makes a clearly erroneous finding of fact.  Hinkson, 585 F.3d at 1262.  A factual finding is clearly erroneous if it is "illogical, implausible, or without support in the record."  Retz v. Samson (In re Retz), 606 F.3d 1189, 1196 (9th Cir. 2010) (citing Hinkson, 585 F.3d at 1261-62 & n.21).

## V. DISCUSSION

**A.    The Employment Application**

Because the Danners and the Werrys are debtors-in-possession acting in the capacity of a trustee, they are required to obtain approval under § 327 for any professional they seek to employ. See 11 U.S.C. § 1107.  Valid employment under § 327 is a prerequisite to compensation.  Movitz v. Baker (In re Triple Star Welding, Inc.), 324 B.R. 778, 790 (9th Cir. BAP 2005).  Section 327 provides that:

> with the court's approval, [a trustee] may employ one or more attorneys, . . . or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons . . . .

11 U.S.C. § 327(a).  Thus, in order to obtain court approval, two conditions have to be satisfied: the professional (1) may not hold or represent an interest adverse to the estate, and (2) must be a disinterested person.  Tevis v. Wilke, Fleury, Hoffelt, Gould & Birney, LLP (In re Tevis), 347 B.R. 679, 687 (9th Cir. BAP 2006).  A "disinterested person" means a person that is not a creditor, equity security holder or insider and does not have an interest materially adverse to the interest of the estate or any class of creditors or equity security holders.  See 11 U.S.C. § 101(14).  A "creditor" is an "entity that has a claim against the debtor that arose at the time of or before the order for relief."  11 U.S.C. § 101(10).

Applications for employment must provide "full, candid and complete" disclosure of the facts pertinent to a court's determination of whether an attorney is qualified under § 327. Mehdipour v. Marcus & Millichap (In re Mehdipour), 202 B.R. 474,

480 (9th Cir. BAP 1996); <u>Neben & Starrett, Inc. v. Chartwell Fin. Corp. (In re Park-Helena Corp.)</u>, 63 F.3d 877, 880 (9th Cir. 1995) (attorneys must comply with strict disclosure requirements). Rule 2014(a) mandates that an application for employment include a verified statement of the proposed professional that sets forth the professional's connections with the debtor, creditors, or any other party in interest.

The UST did not object to the employment of French based on any disqualification as a result of an adverse interest or because French was not disinterested.[8]  Instead, the UST objected to the proposed terms and conditions of French's employment. Specifically, the UST contended that it was improper for French to accept any prepetition fees for postpetition services without receiving authorization by the bankruptcy court under the requirements of § 330.[9]

---

[8] The bankruptcy court in the <u>Werry</u> case found that French did not properly disclose that Duppong was a creditor of the estate.  Furthermore, it found that (although unclear) if the Retainer was paid to French directly by Duppong, French likely was not a disinterested person under § 327(a).  Because we affirm the bankruptcy court's decision to deny the Werry Employment Application based on the analysis of the Retainer, we need not address whether the bankruptcy court erred in finding that the disclosure was inadequate or that French was potentially not disinterested.

[9] Prepetition payment for prepetition services are not considered property of the estate and such payment is solely reviewed for reasonableness under § 329.  <u>See</u> <u>In re C&P Auto Transp., Inc.</u>, 94 B.R. 682, 687 (Bankr. E.D. Cal. 1988). However, review under § 329 is not undertaken as a matter of course, but by motion made by any party in interest or on the court's own initiative.  Rule 2017(a).  Thus, the use of § 329
(continued...)

-10-

The bankruptcy court must ensure that attorneys who represent the debtor do so in the best interests of the estate. Id. at 880. Professionals seeking employment must disclose, along with the employment application, the terms and conditions of any compensation agreement. Rule 2014(a), Local Bankruptcy Rule (LBR) 2014.1(a)(1). As a result, courts examine proposed fee arrangements when deciding whether to approve employment applications. Additionally, § 328 contemplates that employment of professionals under § 327 will be based on reasonable terms and conditions. 11 U.S.C. § 328(a). Thus, a bankruptcy court may properly review an employment application for the reasonableness of the compensation agreement at the outset of a case. In re Heritage Mall Assocs., 184 B.R. 128, 131 (Bankr. D. Or. 1995).

Section 328(a) provides that the debtor-in-possession, with the court's approval, "may" employ a professional under § 327 "on any reasonable terms and conditions of employment, including on a retainer [basis] . . . ." 11 U.S.C. § 328(a). The operative words are "may" and "reasonable." A bankruptcy court has wide discretion to decide whether a proposed arrangement is or is not reasonable or appropriate under the circumstances of a particular case. See Official Comm. Of Unsecured Creditors v. Harris (In re Sw. Food Distribs., LLC), 561 F.3d 1106, 1112 (10th Cir. 2009) (considering attorney fees with the employment application is

⁹(...continued)
shifts the burden from the debtor and his attorney to demonstrate the fees spent in a case are reasonable to the creditors and the court to identify an issue as to excessive or unreasonable fees.

judicially efficient). If a bankruptcy court does decide to approve a professional's employment and its proposed compensation arrangement under § 328(a), then a bankruptcy court's later inquiry into the reasonableness of the fees is limited to whether the agreement proved to be "improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions." 11 U.S.C. § 328(a).

The Ninth Circuit has held that if an attorney wants approval of its compensation arrangement or retention agreement at the outset of a case, he must unambiguously specify that he seeks approval under § 328 in his employment application, otherwise the attorney must justify his fees as reasonable for actual and necessary services and be approved by the bankruptcy court under the application procedure of § 330. Circle K. Corp. v. Houlihan, Lokey, Howard & Zukin, Inc. (In re Circle K Corp.), 279 F.3d 669, 673-74 (9th Cir. 2002).

Here, French did not seek approval of his compensation arrangements with the Danners or Werrys under § 328. Nevertheless, French argues that because the Retainer was an advance payment retainer, it was not subject to review under § 330. He argues that because the Retainer was not property of the estate and was paid prepetition, that the only review that applied was a review for reasonableness under § 329. Thus, in order to assess French's argument, we must turn to an analysis of the nature of the Retainers.

**B.     The Retainers**

There are several types of retainers used by attorneys in

fee arrangements.[10] For example, there is a "classic" retainer that is a retaining fee given to insure and secure an attorney's future services and induce him to act for the client. Rus, Miliband & Smith, APC v. Yoo (In re Dick Cepek, Inc.), 339 B.R. 730, 736 n.5 (9th Cir. BAP 2006). An "advance payment retainer" is defined "as one in which the debtor pays for all or a portion of the services to be rendered by the attorney in advance, or in other words, a 'flat fee' arrangement." In re Dearborn Constr., Inc., 2002 WL 31941458, *5 (Bankr. D. Idaho, Dec. 20, 2002); In re GOCO Realty Fund I, 151 B.R. 241, 251 (Bankr. N.D. Cal. 1993); see also, In re Dick Cepek, Inc., 339 B.R. at 736 (advance payment retainer occurs when client pre-pays for expected services). Classic and advance payment retainers are considered to be earned-on-receipt entitling an attorney to the retainer at the time of payment. In re Dick Cepek, Inc., 339 B.R. at 736. Thus, once the client pays the retainer, the client no longer has an interest in the money, and the retainer becomes property of the attorney.

A more common type of retainer is the security retainer. "A security retainer is generally held as security for payment of fees for future services to be rendered by the attorney." Id. A security retainer differs from an earned-on-receipt retainer because the money remains property of the client until the attorney applies it to charges for services actually rendered;

---

[10] "The term 'retainer' has become inherently ambiguous [and] . . . has come to be used loosely in various connotations to include the compensation paid to an attorney for services." In re C&P Auto Transp., Inc., 94 B.R. at 686.

any unearned funds are returned to the client.  Id. citing 3 COLLIER ON BANKRUPTCY ¶ 328.02[3][b][I] (15th ed. 2005).  Because a security retainer remains the client's property until it is earned and applied to services rendered, it must be held in an attorney's client trust account.  Thus, security retainers are routinely held to be property of the estate.  In re Blackburn, 448 B.R. 28, 35 (Bankr. D. Idaho 2011).

French's main argument on appeal is that the bankruptcy courts' refusal to approve the Danner Employment Application and the Werry Employment Application was based on an erroneous view that advance payment retainers are impermissible under the Bankruptcy Code.  He asserts that there cannot be a prohibition on the use of advance payment retainers because they are critical to ensure compensation in chapter 7 cases.[11]

The bankruptcy courts, however, did not deny the Danner Employment Application and the Werry Employment Application because of the use of an advance fee retainer.  Indeed, the bankruptcy courts agreed that if the Retainers were advance payment retainers then the debtors and their estates would not have an interest in the retainers.  However, the bankruptcy

[11] Chapter 7 debtors' attorneys not employed under § 327 may not draw on a security retainer in compensation for fees because the retainer is property of the estate, and to do so would undermine § 330 and the holding of Lamie v. United States Trustee, 540 U.S. 526, 538-39 (2004).  However, because flat fee, or advance payment retainers, belong to the attorney when paid, Lamie allows attorneys to be paid a reasonable advance/flat fee retainer without approval under § 327 or § 330.  See In re Blackburn, 448 B.R. at 37.  "Indeed the Code anticipates these arrangements." Lamie, 540 U.S. at 538 (citing § 329).

-14-

courts reviewed the nature of the Retainers and determined that the Danners and the Werrys retained an interest in them. As a result, even though French steadfastly characterizes the Retainers as advance payment retainers, the bankruptcy courts found that they were not actually advance payment retainers but security retainers. In re C&P Auto Transp., Inc., 94 B.R. at 687 (the substance, not the name of a retainer determines its nature and legal attributes). French does not articulate in his appellate briefs why the bankruptcy courts clearly erred in finding that the Retainer was a security retainer, and upon reviewing the records, we cannot say the finding was illogical or implausible.

The issue of whether a debtor's interest in a retainer is property of the estate is a question of federal law. McCarthy, Johnson & Miller v. N. Bay Plumbing, Inc. (In re Pettit), 217 F.3d 1072, 1078 (9th Cir. 2000); In re Blackburn, 448 B.R. 28 at 35. However, "bankruptcy courts must look to state law to determine whether and to what extent the debtor has any legal or equitable interests in property as of the commencement of the case." In re Pettit, 217 F.3d at 1078 citing Butner v. United States, 440 U.S. 48, 55 (1979) ("Property interests are created and defined by state law."). Thus, we review whether under Idaho law a client/debtor maintains an interest in an advance payment retainer. See also, In re McDonald Bros. Constr., Inc., 114 B.R. 989, 996 (Bankr. N.D. Ill. 1990) (If under state law ownership of a retainer passed to the professional, the client/debtor would have no interest in the retainer and the retainer would not be property of the estate; therefore, earned-on-receipt retainers

-15-

could be taken by professionals without prior court approval.).

Idaho law allows for advance payment retainers, provided the fee is reasonable. See State ex. rel. Moore v. Scroggie, 704 P.2d 364, 370 (Idaho Ct. App. 1985); see also, Idaho Rules of Professional Conduct (IRPC), commentary, 1.5 ("Fees") at [4].[12] However, any advance payment made to an attorney is not considered the attorney's property until it is actually earned. Id.; IRPC 1.16(d). Additionally, IRPC 1.15(c) directs attorneys to deposit into a client trust account legal fees and expenses that have been paid in advance, to be drawn on by the attorney only as fees are earned or expenses incurred.

As the bankruptcy courts noted, in order for French to properly obtain an interest in the Retainers, he had to have earned the fees on receipt. In the disclosures of compensation filed with the Danner Employment Application and with the Werry Employment Application, French indicated that in consideration for the Retainers, French would: (1) provide an analysis of the Danners' and Werrys' financial situations and advise them on whether to file bankruptcy; (2) prepare and file bankruptcy petitions, schedules and plans; (3) represent them at the § 341 meeting of creditors and plan confirmation hearing; and, (4) with respect to the Werrys, represent them in adversary proceedings and other contested bankruptcy matters. However, there was no indication that the Retainer amount of $7,500 would completely

---

[12] Idaho law regarding advance payment retainers is scant, limited essentially to Scroggie. Additionally, there does not appear to be an Ethics Opinion interpreting the IRPC or discussing advance fee retainers.

-16-

compensate French for those tasks. Although French disclosed that $4,294.50 of the Werrys' Retainer had been drawn on for non-specified prepetition services, French did not otherwise indicate what portion of the Retainers had been billed or used to complete any of the specific enumerated tasks.[13]

French stated that he would draw on the Retainers only as the time and services were expended on the cases and that any unearned portion of the Retainers would be refunded. French also stated that he would seek additional compensation if the fees for services provided exceeded the amount of the Retainers. Moreover, French indicated that his fees would be based on hourly billing rates and that he would provide regular detailed statements showing the work done, time spent, and the charges incurred and deducted from the Retainers. These facts support the bankruptcy courts' findings that the Retainers were not true earned-on-receipt or advance payment retainers, but instead were security retainers where fees are determined and earned as the hours are worked in the respective cases and the retainers are used to provide a secure source of payment for the past and future services.

Based on the information contained in the Danner Employment Application, Werry Employment Application, and the accompanying fee agreements and disclosures, French concedes that the Retainers were not entirely earned prepetition and that they were not anticipated to fully compensate French for enumerated past

_____

[13] French did not indicate that any of the Danners' Retainer had been used for prepetition services.

-17-

and future services that he expected to perform in the bankruptcy cases. Thus, we conclude that the bankruptcy courts' findings that the Retainers were not advance payment retainers, but were instead security retainers, were not clearly erroneous.

The consequence of the bankruptcy courts' findings that the Retainers were security retainers is that the Retainers were property of the Danners' and Werrys' bankruptcy estates. French acknowledges that approval of compensation from funds of the estate requires the authorization and approval under §§ 330 and 331. See, e.g., Appellants' Opening Brief, BAP No. ID-11-1525 at 25; Appellants' Opening Brief, BAP No. ID-11-1315 at 10-11. Accordingly, we conclude that the bankruptcy courts did not err in denying the Danner Employment Application and the Werry Employment Application because they failed to contemplate approval of the Retainers under § 330.

## VI. CONCLUSION

For the reasons stated above, we AFFIRM the order of the bankruptcy court that denied the Danner Employment Application in BAP No. ID-11-1315 and the order of the bankruptcy court that denied the Werry Employment Application in BAP No. ID-11-1525.

-18-